THEODORE M. MALTBIE, TRUSTEE *vs.* HOBART L. HOTCHKISS.

A voluntary assignment by a debtor for the benefit of creditors under the insolvent law of the state, is *primâ facie* an act of bankruptcy within the meaning of the 35th section of the Bankrupt Act of 1867.

But such an assignment, no proceedings in bankruptcy having been instituted, is valid, and remains valid unless such proceedings are instituted within six months thereafter.

REPLEVIN by the plaintiff as trustee of the insolvent estate. of Jewett G. Smith, for property attached by the defendant, a sheriff's deputy, as the property of Smith; tried in the Court

of Common Pleas in New Haven county, (*Bronson, J.,*) facts found and reservation for advice.

The case is sufficiently stated in the opinion.

*L. H. Bristol*, for the plaintiff, cited Gen. Stat., tit. 20, ch. 5, sec. 121; *Ex parte Ziegenfuss*, 2 Ired., 463; *Strong* v. *Carrier*, 17 Conn., 319, 331; *Hawkins' Appeal*, 34 id., 548; *Dodge* v. *Sheldon*, 6 Hill, 9.

*J. T. Platt*, for the defendant, cited Gen. Stat., tit. 20, ch. 5, secs. 121, 123; *Sturges* v. *Crowninshield*, 4 Wheat., 122; *Ogden* v. *Saunders*, 12 id., 213; *Baldwin* v. *Hale*, 1 Wall., 223; *Golden* v. *Prince*, 3 Wash. C. C., 313; 2 Kent Com., 390; *Griswold* v. *Pratt*, 9 Met., 16; *Ex parte Eames*, 2 Story, 322; *Cook* v. *Moffat*, 5 How., 308; *Day* v. *Bardwell*, 97 Mass., 246; *Meekins et al.* v. *Their Creditors*, 19 La. Ann., 497; *Martin* v. *Berry*, 37 Cal., 208; *Van Nostrand* v. *Carr*, 30 Md., 128; *Commonwealth* v. *O'Hara*, 6 Amer. Law Reg., (N. S.), 765; *Fisk* v. *Montgomery*, 21 La. Ann., 446; 1 Kent Com., 422; *Shepardson's Appeal*, 36 Conn., 23; *In re Langley*, 7 Amer. Law Reg., (N. S.), 429; *In re Smith*, 3 Bankruptcy Reg., 98; *In re Randall*, id., 4; *Anon*, id., 78; *In re Pierce*, id., 61; *Spicer* v. *Ward*, id., 127; *In re Goldschmidt*, id., 41; *Hardy* v. *Bininger*, 4 id., 77; *In re Stubbs*, id., 124; *Bates* v. *Coe*, 10 Conn., 295.

CARPENTER, J. The defendant, a deputy sheriff, attached the property described in the declaration, on the 23d day of November, 1870, by virtue of a writ of attachment against Jewett G. Smith. On the same day Smith lodged with the court of probate a deed of assignment under the insolvent laws of this state. On the 30th of the same month the plaintiff was approved as trustee, and thereupon proceeded with the settlement of the estate. The attaching creditors obtained a judgment against Smith on the 9th day of December following. Smith's indebtedness exceeded $4,000, but no proceedings in bankruptcy have been instituted. The plaintiff claims the property as trustee, and the defendant claims it as

deputy sheriff by virtue of said attachment. The defendant's claim is that the bankrupt act of the United States repealed *in toto* the insolvent law of this state, so that it could not operate to dissolve the attachment. This is not a new question in this court. In *Hawkins' Appeal*, 34 Conn., 548, we held that a voluntary assignment by a debtor under the insolvent laws of this state, no proceedings having been instituted under the bankrupt act, was not void, although the United States bankrupt act was in existence, and applicable to the case at the time of the assignment. We see no good reason for overruling that decision and establishing a different doctrine. On the other hand we think there are good reasons why we should not do so.

Since that decision was promulgated, a large number of insolvent estates in this state have been settled in the state courts; under that decision, titles and other rights and interests have been acquired, and it is believed that the evil consequences which would follow a contrary decision now, would far exceed any evils existing under the present state of things.

So far as we know there has been no conflict between the federal and state jurisdictions, and there need be none. The view we take of this interesting question does not in the least interfere with the course of proceeding in the United States courts. If any insolvent debtor, or any creditor of such, desires that the estate shall be settled in that court, it can be done. If all the parties concerned desire that it shall be settled in the state courts, as yet, we see no good reason why that may not be done. Should a case arise in which there will be an actual conflict of jurisdiction, the state court must yield to the national. Even in this case, should the bankrupt court within the time limited assert its jurisdiction, proceedings in our own courts would be thereby superceded. Should the probate court attempt to grant a certificate of discharge to an insolvent debtor under the state law, neither our own courts nor the courts of other states would give effect to any such certificate.

Discharges heretofore granted by the state courts, when no national bankrupt act has been in existence, have given rise to

Maltbie *v.* Hotchkiss.

much litigation, as it has been a grave question to what extent such discharges are operative outside the limits of the jurisdiction which granted them. Debtors so discharged have oftentimes been perplexed and embarrassed in their business enterprises, owing to the doubt and uncertainty as to the effect of such discharges in other states. Hence the demand for a uniform system of bankruptcy. Hence the power conferred upon congress to establish such a system. In this respect we make a material distinction between discharging the debtor, and distributing his assets among his creditors. The bankrupt act was demanded and passed mainly for the former. The latter is in its nature incidental to the former, which is the principal thing. There probably existed in every state, at the time of the passage of the bankrupt act, some statutory provisions for the distribution of the effects of insolvent debtors among their creditors. We are not aware that any complaint was made of the insufficiency of those statutes, or of any hardship in their practical operation, that is not inherent in this kind of legislation. No demand for a bankrupt act was made upon any such ground, and we can hardly believe that congress intended to repeal or suspend those state laws, except so far as was necessary for the accomplishment of the main object in view ; and that necessity, as it seems to us, may well be limited to those cases over which the courts of the United States actually assert their jurisdiction within the time limited for that purpose. The act of congress does not in express terms repeal the state laws. A repeal by implication arising from the force and effect of the constitution of the United States, and from the supremacy of the laws of congress passed in pursuance thereof, must be limited by the terms and provisions of the act from which the implication is derived.

It cannot be doubted that congress has power to prescribe the cases to which the bankrupt act shall, and shall not, apply ; to declare the conveyances which shall, and which shall not, be affected thereby ; and also to declare the extent of its operation to defeat or repeal state laws relating to the same subject matter. Therefore, assuming that congress has jurisdiction, and, if exercised, exclusive jurisdiction over the whole

matter of distributing the effects of an insolvent debtor among his creditors—a proposition which we by no means admit—the intention of congress, as ascertained from the bankrupt act itself, must be our guide.

And that brings us to consider some provisions in the bankrupt act which have not been adverted to in the discussions upon this question before this court.

In the 35th section it is provided that "if any person being insolvent, or in contemplation of insolvency or bankruptcy, within six months before the filing of the petition by or against him, makes any payment, sale, assignment, transfer, conveyance, or other disposition of any part of his property to any person who then has reasonable cause to believe him to be insolvent, or to be acting in contemplation of insolvency, and that such payment, sale, assignment, transfer, or other conveyance is made with a view to prevent his property from coming to his assignee in bankruptcy, or to prevent the same from being distributed under this act, or to defeat the object of, or in any way impair, hinder, impede, or delay the operation and effect of, or to evade any of the provisions of this act, the sale, assignment, transfer, or conveyance shall be void, and the assignee may recover the property, or the value thereof, as assets of the bankrupt. And if such sale, assignment, transfer, or conveyance is not made in the usual and ordinary course of business of the debtor, the fact shall be *prima facie* evidence of fraud."

There can be no doubt that the deed of assignment in this case comes strictly within this provision of the act. The assignor contemplated insolvency, and acted with a view to a *pro rata* distribution among his creditors, and the assignee so understood it. It was *prima facie* an act of bankruptcy, made so expressly by the last sentence quoted above. Now a conveyance like this, if made within six months before the filing of the petition by or against the assignor, is expressly declared void. If more than six months elapse after the conveyance, and before the filing of the petition, the conveyance by necessary implication is unaffected by the bankrupt act. If originally valid it remains valid still. From this provis-

ion it seems manifest that congress intended that the bankrupt act should leave all such conveyances as it found them, unless proceedings in bankruptcy were instituted within six months. There is some analogy in respect to the question now under consideration, between this provision and that relating to attachments. The same section, together with section 14, makes void all attachments made within four months next before the filing of the petition, leaving all attachments made before that time in full force. An attachment is a sequestration of the debtor's property to pay a single debt. An assignment in insolvency is a sequestration of all his property to pay all his creditors *pro rata.* The one may work a preference; the other cannot. If either is to be favored, in an act having for one of its objects an equal distribution among creditors, the latter certainly is entitled to that preference. In respect to the proper construction of the former there is no doubt. Why should there be in respect to the latter? The language of the act in relation to the two classes of cases is similar. The principal difference has reference to time, being four months in the one case, and six in the other. But the difference in time is immaterial. The substance in both cases is the same, and the construction should be the same.

That part of the act which relates to involuntary bankruptcy seems to throw some light also on this question. By the 39th section it is provided, among other things, that any person, who, being bankrupt or insolvent, or in contemplation of bankruptcy or insolvency, shall make any payment, gift, grant, sale, conveyance or transfer of money or other property &c., with intent by such disposition of his property to defeat or delay the operation of this act, &c., shall be deemed to have committed an act of bankruptcy, and, *subject to the conditions hereinafter prescribed,* shall be adjudged a bankrupt on the petition of one or more of his creditors &c., *provided such petition is brought within six months after the act of bankruptcy shall have been committed.* And if such person shall be adjudged a bankrupt, the assignee may recover back the property conveyed &c.

The assignment under which the plaintiff here claims, is

an *act of bankruptcy by virtue of this section, but only* unless proceedings are taken in the United States court within six months; and by the 35th section the assignment is made *void only* if made within six months before the filing of the petition in bankruptcy.

It is not claimed that the bankrupt act by express terms makes the conveyance in this case *void*; it is only claimed that it does so by necessary implication. But we think that the implication from the sections of the act above referred to is clear and decided the other way ; and that congress intended that this, and all similar conveyances, should be good unless attacked under the bankrupt act within six months.

There is another aspect of this case worthy of notice. The defendant claims the property by virtue of an attachment in favor of a creditor. If his claim is sustained, the attaching creditor appropriates to himself the property to the exclusion of the others. It would be strange indeed if these two laws, each intending and providing that the debtor's property shall be equally distributed among all his creditors, should be so interpreted, in any case, as to defeat that object and work a practical preference. But we lay no special stress upon this circumstance. We prefer that the decision should rest upon broader grounds.

For these reasons we advise the Court of Common Pleas to render judgment for the plaintiff.

In this opinion the other judges concurred.