ISAAC J. GEERY'S APPEAL FROM PROBATE.

The insolvent law of this state is not wholly superseded by the bankrupt act of the United States, in respect either to voluntary or involuntary proceedings under it.

Where the two however come into any practical conflict, the United States law is of course to prevail.

But voluntary assignments under the state insolvent law are valid, unless proceedings in bankruptcy are instituted within six months thereafter.

And compulsory proceedings may be resorted to by creditors under the state law, where the debtor declines to go into voluntary bankruptcy, and there has been no act of bankruptcy of which the creditors can avail themselves, and where the proceedings do not deprive the debtor of his opportunity to obtain a discharge under the bankrupt act.

[By CARPENTER, PARDEE and LOOMIS, Js.; PARK, C. J., and FOSTER, J., dissenting.]

APPEAL from a decree of a court of probate appointing a trustee of the Guiness Sewing Machine Company, an insolvent corporation; taken to the Superior Court in Fairfield County.

The insolvent proceedings were instituted by George A. Hoyt, a creditor of the corporation, upon a claim of over three hundred dollars, and the trustee was appointed under the provisions of the insolvent law of the state. The appellant assigned the following reasons of appeal:

That the said Guiness Sewing Machine Company, before and at the time of the filing of the petition by the appellee in the court of probate, and the commencement of proceedings therein, was indebted to a greater amount than three hundred dollars, and was bankrupt and unable to pay its debts in full; and that the action of said probate court in overruling the answer to said petition, and in appointing said trustee, was and is contrary to the bankrupt law of the United States, and without its jurisdiction, and therefore void.

The court made the following finding of facts:

Upon the trial of this case to the court, it is found that the allegations in said petition of George A. Hoyt, to the court of probate, are proved and true. And that the said Guiness Sewing Machine Company were, before and at the time of

VOL. XLIII.—37

filing said petition, and still continue to be, indebted to the said George A. Hoyt, and the said Isaac J. Geery and other creditors, in a larger amount than the sum of three hundred dollars, and that said company were then, and are still, unable to pay all their just debts in full, and that the said Isaac J. Geery at the time of the filing of said petition had attached property of said company, to secure his claim against them; but whether said attachment is affected by the filing of the said petition and the proceedings thereunder does not appear.

Upon these facts the case was reserved for the advice of this court.

*J. B. Curtis*, for the appellant.

1. The insolvent law of Connecticut, in relation to involuntary insolvency, contravenes the 5014th and 5021st sections of the bankrupt law of the United States, (pages 975 and 976 of the Revised Statutes of the United States,) and is therefore suspended, and all proceedings under it are absolutely void. The 5014th section specifies only two requisites in order to entitle a person to be declared a bankrupt. 1st. That he shall owe debts exceeding $300. 2d. That he shall be unable to pay all his just debts in full. And any person coming within the above mentioned conditions, is entitled to be declared a bankrupt. In what manner, then, do proceedings in involuntary insolvency under the statute of Connecticut, conflict with the provisions of the bankrupt law last mentioned? The statute, as to involuntary insolvency, requires that an attachment shall issue, that a demand shall be made by the officer upon the debtor for estate to satisfy the attachment, that the officer shall be unable to find estate on which to levy to satisfy the attachment, and that the debtor shall fail to pay or secure the debt satisfactorily to the court of probate. Now, in order to give the court of probate jurisdiction under the statute regarding insolvency, it must appear that the insolvent is indebted, that an attachment has issued thereon, and that he cannot satisfy the attachment. If it appears that he owes debts exceeding $300, then he is indebted in a sum sufficient to bring him within the 5014th and 5021st

sections of the bankrupt act. If he has no property to satisfy the attachment, and is unable or fails to pay or secure the debt for which the attachment issues, then he is unable to pay all his just debts in full, and his case equally comes within said 5014th section. For this reason, if the officer fails to find property, or the bankrupt refuses to turn it out, or refuses to pay or satisfy the debt, his inability or failure so to do arises from one of two causes. One of these is, that his property has been levied upon, or absorbed in the payment of debts, or squandered or destroyed. If either of these causes has rendered him unable to pay his just debts, the fact brings his case directly within the provisions of said 5014th section. The other is, that he has concealed, removed or conveyed away his property to avoid his debts, and this renders him alike unable to pay his just debts in full, and brings him equally within the provisions of said 5014th section. But if he has concealed, removed or conveyed away his property to avoid his debts, and has thereby become unable to respond to the attachment, or pay or secure the debt for which the attachment issues, then his case is brought directly within the third division of the 5021st section of the bankrupt law. Thus the condition of the debtor, which would warrant the intervention of the court of probate by proceedings in insolvency, would be precisely the condition that would enable the courts of the United States to hold jurisdiction by proceedings in bankruptcy.

2. The power granted to Congress by the constitution is the power to establish uniform laws on the subject of bankruptcy throughout the United States, and Congress is not authorized merely to pass laws the operation of which shall be uniform, but to establish uniform laws on the subject, and this establishment of uniformity is incompatible with state legislation on that part of the subject to which the acts of Congress may extend. *Sturgis* v. *Crowninshield*, 4 Wheat., 122. Two statutes, having the same general object and acting upon the same persons and same cases, by different modes and in different jurisdictions, must be in conflict with each other. Though the mode by which the remedy is administered

may vary, yet where the bankrupt act and the state law have substantially the same scope and object, and act upon the same persons and cases, the state law is suspended. The act of Congress is both a bankrupt act and insolvent law. *Martin* v. *Berry*, 2 Bankr. Register, 629; *S. C.*, 37 Cal., 208; *Van Nostrand* v. *Carr*, 2 Bankr. Reg., 485; *S. C.*, 30 Maryl., 128.

3. The bankrupt act, as soon as it took effect, *ipso facto* suspended all actions upon future cases arising under the insolvent laws of the state. Where the insolvent laws act upon the same subject matter and the same person as the bankrupt law, all proceedings commenced under the state laws, after that time, are null and void. *In re Eames*, 2 Story R., 323; *Bishop* v. *Loewen*, 2 Penn. Law Journal, 364; *Sturgis* v. *Crowninshield*, 4 Wheat., 122; *Ogden* v. *Saunders*, 12 id., 273; *Griswold* v. *Pratt*, 9 Met., 16; *Commonwealth* v. *O'Hara*, 1 Bankr. Reg., 86; *Perry* v. *Langley*, 1 Bankr. Reg., 559; *S. C.*, 7 Am. Law Reg., 429; *Van Nostrand* v. *Carr*, 2 Bankr. Reg., 485; *Martin* v. *Berry*, 37 Cal., 208; *Corner* v. *Miller*, 1 Bankr. Reg., 403; *In re Reynolds*, 8 R. Isl., 485; *Shepardson's Appeal from Probate*, 36 Conn., 23; *Cassard* v. *Kroner*, 4 Bankr. Reg., 569; *In re Independent Ins. Co.*, 6 id., 230; *In re Reiman*, 11 id., 38; *Watson* v. *Citizens' Savings Bank*, id., 162; *Lavander* v. *Gosnell*, 12 id., 284.

4. The case of *Hawkins's Appeal from Probate*, 34 Conn., 548, and *Maltbie* v. *Hotchkiss*, 38 Conn., 80, only lay down this doctrine, that an assignment for the benefit of creditors is a right existing at common law, and the statute in relation thereto is only in regulation of the right; and that if no proceedings are instituted in bankruptcy within six months previous to the date of such assignment, such assignment is valid, notwithstanding the bankrupt law. But the law has been held otherwise by the District Court of the Southern District of Ohio. *Perry* v. *Langley*, 7 Am. Law Register, 429. These cases do not in any manner affect the question involved in the case under consideration.

*C. G. Child* and *W. C. Strobridge, Jr.*, for the appellee.

It will be noticed that the only facts tending to show the condition of the corporation in question are, that it is unable to pay its debts, and that such indebtedness exceeds the sum of $300. No act of bankruptcy is alleged; no intimation is made of proceedings in the United States court; no facts are given to lay the foundation of a proceeding in bankruptcy under the laws of the United States, and the real question resolves itself into this:—The law of the state of Connecticut provides a remedy for a creditor upon a certain state of facts, by means of which the debtor's property is placed in the hands of a trustee for the benefit of his creditors. The bankrupt law of the United States upon such facts provides no remedy whatsoever, and has no jurisdiction in the premises. Is the state law inoperative and null? We claim that it is suspended by the national bankrupt act only so far as the provisions of the United States law apply to the subject matter of the state law; and that where the United States law does not apply to the subject matter of the state law the state law is in full force; and *a fortiori*, where no jurisdiction exists in the United States court, it cannot interfere with or supervise or control the state court.

1. This is shown by the intent and clear implication of the bankrupt act itself. The District Courts of the United States are the courts of bankruptcy; they are authorized by the first section of the act "to hear and adjudicate upon [matters of bankruptcy] *according to the provisions of this act."* And by sect. 563 of U. S. Revised Statutes the District Court has original jurisdiction in all matters and proceedings in bankruptcy, and by section 711 this jurisdiction is exclusive. But the proceedings in bankruptcy over which jurisdiction is given are not deemed commenced until a petition is filed. Id. sec. 4,991. By section 5,014 voluntary bankruptcy is limited to persons owing more than $300, and whose debts are provable under the act; and by sections 5,021–5,023, the means by which a proceeding *in invitum* can be had, and the property of the debtor applied to payment of his debts, are set out. The act provides a remedy against one owing debts provable by section 5,014, under special circumstances, occasioned by

the act of the debtor *and* by action on the part of the creditors, within a limited time after the acts of the debtor have been consummated. Until the debtor commits these acts there is no power on the part of creditors to commence proceedings, and no power on the part of the court to adjudicate the debtor a bankrupt. Again, before the court has jurisdiction to enforce this section of the statute and adjudicate a debtor bankrupt, *the creditors must act;* and unless one-fourth at least in number, and owning debts aggregating one-third of the debtor's entire provable debts, petition, and that within a limited period after the commission of the act of bankruptcy, the court has no power in the premises, and no proceedings in bankruptcy can be commenced. When, therefore, debts are less than three hundred dollars; where no act of bankruptcy has been committed; where the period after such act exceeds the statutory time; where the requisite number of creditors and essential amount of debts are unrepresented, the bankrupt act provides no means by which an assignee can be appointed under *in invitum* proceedings; no way in which proceedings can be commenced. Certainly the exercise of the state court's jurisdiction, when Congress has removed the subject matter out of its own control, is legitimate and proper, and intended by Congress to be exercised. The whole intent of the act is to vest jurisdiction in certain classes of cases, and to afford relief in certain ways, but in other respects to assume no jurisdiction. The courts of the United States having no common law jurisdiction, unless expressly given by statute, Congress could not have intended to divest courts which had already acquired jurisdiction existing under state laws, by implication or inference. *Wilson* v. *City Bank*, 17 Wall., 473, 485; *Jones* v. *Sleeper*, 2 N. Y. Leg. Obs., 135. Nor does the constitutional provision conflict with our position, for the question is no longer open that the state can pass insolvent and bankrupt laws, that the right is not vested solely in Congress, and that where the state has jurisdiction, in the absence of the laws of Congress, it can exercise it. *Sturges* v. *Crowinshield*, 4 Wheat., 122; *Gibbons* v. *Ogden*, 9 id., 197, 227, 235, 238; *Houston* v. *Moore*, 5 id., 34, 49, 52, 54; *Bald-

*win* v. *Hale*, 1 Wall., 228. The *right*, therefore, to enact a national bankrupt law remains dormant until called into exercise by Congress, and all state insolvent or state bankrupt laws during that period are in full force, only limiting the operation of the discharge to the state in which it is granted. *Hempstead* v. *Reed*, 6 Conn., 480; *Norton* v. *Cook*, 9 id., 314. But in the courts of such state, upon contracts made within the state between its own citizens and suitors, it is conclusive. See *Baldwin* v. *Hale*, 1 Wall., 223, 231, 232. There was a state insolvent law in Connecticut, both voluntary and involuntary, when the bankrupt act of 1867 was enacted; it has never been repealed. The effect of the latter act is to *suspend*, not annul, such state law. There can be no question that the repeal of the national act would leave the state law in full force. We claim, therefore, that when Congress has legislated upon a system of bankruptcy, (conceding that in all respects in which that law clashes with a state law the act of Congress is supreme), the state law is only *dormant* in cases over which the United States law assumes jurisdiction, and just in that degree in which the amendments to the original bankrupt act further limit the jurisdiction of the United States, the state law revives *ipso facto*. And we deny as unsound the claim that, by the constitutional power to establish a uniform system of bankruptcy, Congress can by exercising jurisdiction over a part of the subject matter of a state insolvent law, suspend its exercise in matters not within the scope of the act of Congress; and that it makes no difference whether this be involuntary or voluntary insolvency.

2. Such is the construction of the courts. In *ex parte* *Eames*, 2 Story R., 322, the suspension of the state law is limited to *persons within the purview of the bankrupt act*. If *persons* not within the purview of the act are not affected, are debts, acts and causes of action not within its purview affected? In *Griswold* v. *Pratt*, 9 Met., 16, the limitation is applied to "the same persons, the same contracts and the same assets." *Ziegenfuss's Case*, 2 Ired. (Law), 463, is to the same effect, only it carries the doctrine farther, and farther than we need to go. So also *In re Reynolds*, 8 R. Isl., 485, where it is

held that the operation of a state law is suspended so far as the provisions of the act of Congress apply to its subject matter. Cooley's Const. Lim., 293. The Court of Appeals of New York, in *Cook* v. *Whipple*, 55 N. York, 150, recognizes the position we claim. In *ex parte Winternitz*, 18 Pittsburg Leg. Journal, 61, Judge Ludlow, of the Court of Common Pleas of Philadelphia, recognizes our claim strongly. And the first bankrupt act of April 4, 1800, recognizes, in the 61st section, our claim in express terms. 2 U. S. Statutes at Large, p. 36. And see, on the limitations of this law, *Clarke* v. *Ray*, 1 Har. & Johns., 318, 329, 330; *Horter* v. *Harlan*, 7 Bank. Reg., 238; *In re Campbell*, 1 Bank. Reg., 165; *In re Burns*, 1 Bank. Reg., 174; *Clark* v. *Bininger*, 9 Am. Law. Reg., N. S., 305. See also *Langley* v. *Perry*, 2 Bank. Reg., 598, in which case Judge Swayne reverses the judgment of *Perry* v. *Langley*, 7 Am. Law. Reg., N. S., 429, and recognizes the state law where an act of bankruptcy has not been committed. And see also on this point, *In re Nickodemus*, 3 Bank. Reg., 230, 232, where Judge Withey holds that, in addition to indebtedness, at least one of the acts of bankruptcy enumerated must be shown. The facts proved in this case show simple indebtedness, and inability to pay debts exceeding $300. Certainly this is no act of bankruptcy as set forth by the bankrupt act. The state law provides for the protection of an attaching creditor, and unless the claim is satisfied, places the debtor's property in the hands of a trustee. The main object of the law is to protect the creditor's effort to secure his claim and prevent a preference by allowing other creditors to intervene. The bankrupt act, however, requires some act to be done by the debtor which amounts to a fraud upon the act, before any jurisdiction can attach to the federal courts. The scope and intent of the laws are essentially different, and in no way conflict with each other. It will also be noticed that the bankrupt act is limited to persons residing within the jurisdiction of the United States; while, under the state law, the creditor's residence alone gives jurisdiction. The Supreme Court of Iowa, in a

review of all the authorities, recognizes our claim, and goes almost the length of Ziegenfuss's case, *supra*, by holding the state law in force till the national law attaches.   In the case at bar the national law can never attach.   *Reed* v. *Taylor*, 32 Iowa, 209.   And in *Baldwin* v. *Hale*, 1 Wall., 228, *supra*, the U. S. Supreme Court recognizes the right of a state to pass an insolvent or bankrupt law provided there be no act of Congress establishing a uniform system of bankruptcy *conflicting with such law*.

3.   We have thus far cited cases outside of our own state. But our own decisions are in harmony with these views, and fully support our claim.   *Hawkins's Appeal from Probate*, 34 Conn., 548; *Shepardson's Appeal from Probate*, 36 id., 23, 25; *Maltbie* v. *Hotchkiss*, 38 id., 80.

CARPENTER, J.   The facts of this case may be briefly stated. The appellant is a creditor of the Guinness Sewing Machine Company, a corporation, and attached property to secure his claim.   The appellee, another creditor, instituted proceedings in insolvency under the statute of this state for the purpose of procuring an equal distribution of the property of the corporation among its creditors.   The court of probate appointed a trustee, and the attaching creditor appealed to the Superior Court, claiming that the bankrupt act of the United States suspends the operation of the state law.   The corporation is unable to pay its debts, and those debts exceed the sum of three hundred dollars.   The company is in a condition to apply voluntarily for the benefit of the bankrupt act, but it has committed no act of bankruptcy, and is not subject to compulsory proceedings.

We are impressed with the magnitude and importance of the questions now before us.   All questions relating to the conflict of a state law with the constitution or laws of the United States are necessarily of a delicate nature, and should receive careful consideration.   We have endeavored to give them all the consideration their importance demands.

The case is a close one and by no means free from doubt and difficulty.   After careful consideration, looking as far as

possible to probable consequences and practical results, and at the same time bearing in mind our obligation to respect and uphold the constitution and laws of the United States, a majority of the court, with some hesitation, have come to the conclusion that the action of the court of probate should be affirmed. In doing so we recognize the supremacy of the act of Congress, and recognize and approve the well established principle that, so far as that act assumes and takes jurisdiction of the parties and the subject matter, just so far is the jurisdiction of the state court excluded. On the other hand, we contend that in respect to all persons and matters over which the bankrupt act declines to take jurisdiction, the statute of this state remains in full force.

The question then for us to determine is, whether this case, upon the facts stated, is within the jurisdiction of the act of Congress. In determining this question we must have regard primarily and principally to the intention of Congress as expressed in that act. That intention, when discovered, will be a sure guide to a correct conclusion.

There are two divisions of the bankrupt act;—*voluntary*, where the debtor himself sets in motion its machinery; and *involuntary*, where it is set in motion by creditors. In either case an act of bankruptcy is essential. Without an act of bankruptcy the federal court can have no jurisdiction.

The filing of the petition by the debtor is expressly made an act of bankruptcy, and authorizes the bankrupt court to proceed and settle the estate of the debtor. No such petition has been filed in the present case, and therefore the jurisdiction of the court, under the voluntary branch of the act, does not attach. It is true a case exists; the corporation is owing over three hundred dollars, and is unable to pay its debts. It may, if it will, institute proceedings in bankruptcy; but it has not yet done so, and it is wholly at its own option whether it ever will. There is and can be no compulsion.

The right of the debtor to file a petition, and the possibility that he may do so, do not of themselves bring the act of Congress in conflict with the state law; for the right, and the power to exercise the right, exist in all cases of insolvency;

and yet the debtor may voluntarily make an assignment under the state law, and such assignment and proceedings under it will be valid unless proceedings in bankruptcy are instituted within six months thereafter.  *Maltbie* v. *Hotchkiss*, 38 Conn., 80; *Mayer and others* v. *Hellman*, 91 U. S. Reports, 496.

It seems clear that voluntary assignments under the state law are only contingently affected by the act of Congress. We see no good reason for holding that compulsory proceedings by a creditor are prohibited, where, as in the present case, the debtor declines to go into bankruptcy, there has been no act of bankruptcy, and the proceedings are not in fraud of the bankrupt act ; the sole object and effect being to prevent a preference of other creditors and compel an equal distribution of the assets.

We have come to the conclusion, therefore, that the first branch of the bankrupt act does not apply to the case before us, and that the case is not yet within the purview of that act in such a sense as to suspend the operation of the state law.

The second branch of the bankrupt act—involuntary bankruptcy—remains to be considered.

Under this division proceedings can only be instituted by creditors; and such proceedings correspond very nearly to proceedings in bankruptcy as distinguished from proceedings in insolvency under the English practice; and proceedings instituted by the debtor under the first division bear some resemblance to proceedings in insolvency under that practice. This is partially true of our state law.  And hence compulsory proceedings under it on account of their fancied or real resemblance to proceedings in bankruptcy in England, have been regarded, but without very good reason, as more obnoxious to the bankrupt act than voluntary assignments, and it has been supposed that the latter may be sustained while the former cannot.  In this connection it may be well to notice the distinction between bankruptcy and insolvency, and call attention to the present state of the law on that subject in this country.

Bankruptcy applied only to merchants, traders, &c.; proceedings were instituted *against* the debtor by creditors, but

only after an act of bankruptcy had been committed—such as absconding from the realm, secreting himself to avoid his creditors, disposing of his property with intent to defraud his creditors and the like; and the object was to secure an equal distribution of his property among creditors. As some compensation for compelling the debtor to give up all his property, the practice was early introduced of giving him a complete discharge from his debts. Thus bankruptcy was regarded as disgraceful, being in the nature of a punishment for some act, either wrong in itself or considered as contrary to good morals and strict integrity in trade, and something to be dreaded and avoided if possible.

On the other hand, insolvency applied to all persons, whether traders or not; no act of bankruptcy was essential (it was rather a hindrance than a help); proceedings were instituted by the *debtor* against a creditor or creditors; and the object mainly was, not to procure a discharge from his debts, but to exempt his body from imprisonment. Thus insolvent laws were intended to benefit the debtor. While they were more general than bankrupt laws in their application to persons, they were more limited in their operation in individual cases, effecting only a partial instead of a full discharge. Thus the law stood in England.

The constitution of the United States provides that Congress shall have power to establish "uniform laws on the subject of bankruptcy throughout the United States." The bankrupt act of 1841 embraced the essential features of both the bankrupt and insolvent laws of England. A question was made whether that part of it which was essentially an insolvent law was within the constitutional power of Congress. The question arose in the Supreme Court of the state of New York, and was elaborately and with great ability discussed by Cowen, J., in favor of the constitutionality of the law, and by Bronson, J., against it. Nelson, C. J., concurred with Judge Cowen. *Kinzler* v. *Kohaus*, 5 Hill, 317; *Sackett* v. *Andross*, 5 Hill, 327. Subsequently the question was decided in the same way by Mr. Justin Catron in *Klein's case*, 1 Howard, 277, and that is now regarded as the law of the land.

Since that time, so far as the law of this country is concerned, the distinction between bankrupt and insolvent laws has been practically obliterated. In regard therefore to the effect of congressional legislation upon state legislation, we are unable to perceive that it makes any difference whether the latter relates to voluntary or involuntary proceedings. In either case, if action by the state court contravenes the policy of the bankrupt act, such action is unauthorized and void. If it does not, and does not defeat or impair any right which the debtor or creditor has under the bankrupt act, we see no objection to its validity.

It may be suggested that involuntary proceedings under our state law may in some way interfere with the debtor's right to a discharge. There may be cases in which this suggestion would be entitled to great weight. If it should be made to appear that the operation of the state law would be to prevent the application of the debtor, or to prevent the payment of the requisite percentage in order to obtain a discharge, or if, the bankrupt court being open, the creditor resorts to the state court instead, thereby depriving the debtor of his discharge; in such cases we concede that the national law would be supreme. But in this case no such questions arise. This is a question between two creditors, and it nowhere appears that the debtor will be in any respect or to any extent prejudiced by the result. The corporation, though a party in the cause, makes no objection to this proceeding. The objection comes only from the attaching creditor, and he fails to show that the state law deprives him of any right or privilege secured to him by the United States law. The chief object of the latter, so far as creditors are concerned, is to give to each his proportional part of the assets of the debtor. *Mayer and others* v. *Hillman*, 91 U. S. Reps., 496. That is secured to him by giving effect to the state law. Our own law therefore does not contravene the policy of the bankrupt act, but is in harmony with it, and promotes, rather than defeats, the intention of Congress.

In *Hawkins's Appeal from Probate*, 34 Conn., 548, prominence is given to the fact that there was in that case a volun-

tary assignment, and the course of reasoning there adopted rests mainly upon that fact. But in *Shepardson's Appeal from Probate*, 36 Conn., 23, which was a compulsory process, the proceeding was sustained on the ground that it did not appear that the debtor owed debts exceeding three hundred dollars.

After a careful consideration of this whole subject we are satisfied that the decisions in this class of cases cannot rest upon any supposed difference between voluntary assignments and proceedings *in invitum*. Independent but not inconsistent reasons were given for sustaining voluntary assignments in *Hawkins's Appeal from Probate* and in *Maltbie* v. *Hotchkiss*, 38 Conn., 80. Proceedings *in invitum* stand upon somewhat different grounds; nevertheless they must be sustained, if sustained at all, upon principles essentially the same; the *intention* of Congress in this as in all other acts must determine the scope and extent of the law. We are not disposed to adopt and follow the arbitrary principle that the exercise of power by Congress to any extent absolutely annuls and renders inoperative all state legislation irrespective of the intention of Congress.

The equal distribution of a bankrupt's property among his creditors is a leading and prominent feature of both national and state laws. It has now become a controlling principle in the laws relating to debtor and creditor. Upon the belief that it will be strictly applied and faithfully administered, in case of bankruptcy, the business of the country is carried on and credit given. The benefit of this principle cannot be denied to a creditor who is in no fault without doing him injustice. It is a remedy upon which he relied in giving credit and to which he is fairly entitled. If that remedy is not to be found in the bankrupt act, it will not be presumed that Congress intended to take away the remedy provided by the state.

It is not pretended and was not claimed by the learned counsel for the appellant that the debtor was subject to proceedings in the bankrupt court at the instance of the appellee. There are two conclusive objections to such proceedings.

First: There has been no act of bankruptcy. That, as we have seen, is essential. In the 39th section of the bankrupt act, as amended by the act of June 22d, 1874, the acts of bankruptcy are carefully enumerated. Unless some act therein described can be shown, the appellee can have no remedy in the bankrupt court. If the appellant would oust the state court of its jurisdiction it is incumbent upon him to show affirmatively the existence of some such act. This he has not done.

Secondly: Even if an act of bankruptcy has been committed, no facts are stated which show that the appellee could have invoked the action of the District Court. By the same amended section it is provided that a person committing an act of bankruptcy " shall be adjudged a bankrupt on the petition of one or more of his creditors, who shall constitute one-fourth thereof at least in number, and the aggregate of whose debts provable under this act amounts to at least one-third of the debts so provable; provided that such petition is brought within six months after such act of bankruptcy has been committed."

Now it does not appear that the appellee constitutes one-fourth in number of the creditors, nor that enough are ready to join with him to make one-fourth; nor does it appear that his debt provable under the act amounts to one-third of the debts so provable; nor does it appear that the petition could have been brought, after there was occasion for doing so, within six months after the act of bankruptcy. We cannot presume that any of these jurisdictional facts exist, and none are proved to exist. Congress having thus limited and restricted the operation of the bankrupt act, leaving, as is obvious, a vast number of cases to which it cannot possibly apply, it will not be presumed that it was thereby intended to leave creditors in such cases entirely without remedy, as must be the case if the state law is inoperative.

There are conflicting decisions upon this general subject; but as most of the cases relate to voluntary assignments, and none of them are exactly in point, we deem it unnecessary to refer to them.

We advise the Superior Court to affirm the decree of the court of probate.

In this opinion PARDEE and LOOMIS, Js., concurred, the latter with hesitation. PARK, C. J., and FOSTER, J., dissented.