ADAMS and another, Assignees, *v.* HYAMS and another.

*(Circuit Court, D. Connecticut.* August, 1881.)

1. SESSION LAWS OF CONNECTICUT OF 1860, *c.* 348, § 5, CONSTRUED—LIABILITY OF SURETIES THEREUNDER.

Under section 5 of chapter 348 of the Session Laws of Connecticut of 1860, sureties of an assignee in insolvency are liable upon their bond in case of their principal's default, though it consists in refusing to obey an order made to subvert the assignment. *Quære,* whether or not an accounting before the county judge is a prerequisite to an action.

2. SESSION LAWS OF 1877, *c.* 466, CONSTRUED—ACTIONS AGAINST SURETIES.

Chapter 466, of the Session Laws of Connecticut of 1877, did not make an accounting before some specified court a prerequisite to an action against such sureties.

3. SAME—RIGHTS OF SURETIES AS AFFECTED THEREBY.

No substantial rights of such sureties were impaired by the repeal of the act of 1860 by the act of 1877.

*William Y. Wilson,* for plaintiffs.

*Philip J. Joachimson,* for defendants.

SHIPMAN, D. J. Upon the facts which have been heretofore found the defendants insist that they are not liable in this suit, because they say that, under the fifth section of chapter 348 of the Session Laws of 1860, if the default of an assignee in insolvency consisted in a refusal to obey an order or decree made to subvert and not to carry out the assignment, an action will not lie against his sureties upon their bond, and also that an accounting by the assignee before the court of common pleas was prerequisite to a suit against his sureties. The defendants rely upon the construction which was placed upon this section in the case of *People* v. *Chalmers,* 1 Hun, 686, and 60 N. Y. 154.

The fourth section of the act provided in substance that after the

lapse of one year from the date of the assignment the county judge, upon the petition of any creditor of the debtor, should have power to compel an accounting by the assignee, and to decree payment of such creditor's proportional just part of the fund. An appeal lay from the decree of the county judge.

The fifth section was as follows:

"Whenever any such assignee or assignees shall omit or refuse to perform any decree or order made against him, her, or them, by a judge or court having jurisdiction, to compel the payment of any debt out of such trust fund, such county judge or court may order the bond of such assignee or assignees to be prosecuted in the name of the people by the district attorney of the county where the said bond is filed, and shall apply the moneys collected thereon in satisfaction of the debts of said debtor or debtors in the same manner as the same ought to have been applied by such assignee or assignees."

Chief Justice Church, speaking for the court of appeals in *People v. Chalmers*, 60 N. Y. 154, says:

"This language (section 5) clearly refers to the order or decree provided for in the fourth section to be made by the county judge on accounting, or by an appellate court upon the appeal from such order or decree. The word 'judgment' is not used; and, as orders and decrees are specially provided for in the fourth section, it is presumed that the use of these words in the fifth section referred to such orders and decrees as the previous section authorized. However this may be, it is quite evident, whatever court may make the order or decree, it must be one to enforce the duty of the assignee under the assignment."

The facts upon which the court based its decision were different from those in this case. In the *Chalmers Case*, sundry creditors of the insolvent debtor had obtained judgments upon their claims, and a decree declaring the assignment to be void as to the plaintiffs, and directing the assignee to pay to them the amount of their judgments ratably out of the assets in his hands. The suit was to subvert the assignment, which was virtually held to be void as to all the creditors. The amount of the judgments was more than the trust fund. Upon the assignee's refusal to pay these judgments, suit was brought against the sureties upon their bond. In this case the assignment was not void as against creditors. It was valid when made, but by the decree in bankruptcy it became void as against the assignees in bankruptcy. By virtue of the assignment, a good title to the assigned property passed to the assignee, subject to be defeated by an assignee in bankruptcy, provided the assignment was made within the respective periods, prior to the filing of the petition for an adjudication, specified in the bankrupt act in the case of voluntary or involuntary

bankruptcy. *Maltbri* v. *Hotchkiss,* 38 Conn. 80; *In re Beisenthal,* 14 Blatchf. 146; *Mayer* v. *Hellman,* 91 U. S. 496. The title of Pamberger had come to an end, and it was his duty, certainly, after he had ascertained that fact by a judicial decree, to transfer the assets to the assignee in bankruptcy, in whom the title had become vested. For his default in not paying to the plaintiffs the balance of the trust funds in his hands after deducting his fees and expenses, the sureties were responsible, provided the amount which was due had been found by the proper court. It seems to be clear that, as between the plaintiffs and Bamberger, the district court had jurisdiction. Whether under the statute the sureties had a right to insist that the accounting should have been had by a county judge, remains to be considered.

The question whether the fifth section of the act of 1860 made an accounting before the county judge a prerequisite to an action against a surety, is one of difficulty. But this suit was commenced after the repeal of the act of 1860 by chapter 466 of the Session Laws of 1877. Section 9 of this chapter provides simply that—

"Any action brought upon an assignee's bond may be prosecuted by a party in interest by leave of the court; and all moneys realized thereon shall be applied, by directions of the county judge, in satisfaction of the debts of the assignor, in the same manner as the same ought to have been applied by such assignee."

Another section provides that all proceedings commenced under the statute of 1860 might be continued under this act.

Whatever construction may be given to the fifth section of the act of 1860, I do not think that an accounting before any specified court was made by the act of 1877 a prerequisite to an action against a surety. If the *dictum* of Chief Justice Church is referred to, the meaning of the fifth section was covered; and if the statute may be said to have been a part of the contract of the sureties, it was not an unalterable part of the contract that an accounting must be had by the county judge before the commencement of a suit upon the bond. The details of the statute may certainly be changed without making the obligation of the surety void, provided no substantial right is impaired. By the supposed change no substantial right of the surety was changed or impaired.

The conclusion is that the plaintiffs, as assignees, are entitled to recover of the defendants the sum of $10,000, with costs.