# GEORGE A. HAWKINS AND OTHERS: APPEAL FROM PROBATE.

A voluntary assignment by a debtor under the insolvent law of the state held valid, although the United States bankrupt act was in existence and applicable to the case at the time of the assignment.

And the proceedings of the probate court in administering upon the insolvent estate so assigned held valid.

Such an assignment is good at common law, without the aid of the statute.

APPEAL from sundry decrees of a court of probate in the settlement of an insolvent estate, assigned for the benefit of

creditors under the insolvent law of the state, taken to the superior court in Windham county, and reserved by that court for the advice of this court. The case is sufficiently stated in the opinion.

*Penrose* and *Phillips*, for the appellants.

*Halsey*, for the appellee.

CARPENTER, J.  On the 6th day of August, 1867, J. & W. Cocking, partners in business, made an assignment of their property to trustees, for the benefit of their creditors under the insolvent laws of this state.

The bankrupt law of the United States, approved March 2d, 1867, was then in full force.  The trustees were proceeding with the settlement of said trust, under the direction of the court of probate, when, on the 23d day of October, 1867, the appellants, being creditors, appealed to the superior court from certain decrees of the court of probate relative thereto.

The reasons for appeal, which are demurred to, show that the case is within the purview of the bankrupt act.  The appellants claim that the effect of the bankrupt act was to suspend the insolvent law of this state *in toto*.  The appellees claim that the state law exists in full force until the bankrupt law attaches itself to the person or property of the debtor by proceedings in bankruptcy.  The appellants in support of their position cite, among other cases, the case of *Griswold* v. *Pratt*, 9 Metcalf, 16.  In that case it was directly decided that the national bankrupt act of 1841, *ipso facto*, suspended and abrogated, during the continuance of such law, the insolvent law of the state of Massachusetts.  The appellees rely upon *Ziegenfuss's case*, 2 Iredell's Law R., 463, which sustains the broad position assumed by them.  The decision of this question does not seem to us essential to a disposition of this case.  This assignment was voluntary on the part of the debtors.  There is nothing in the case to show that any fraud was intended, or that the parties were attempting to defeat the operation of the bankrupt act.  So far as appears the as-

signment, and the proceedings under it, were but the means adopted by the parties for distributing the effects of the insolvent debtors *pro rata* among all their creditors.

It is to be noticed that our insolvent law does not give validity to assignments under it. It simply provides that unless such assignments are made in a certain manner they shall be void; and when made they derive their force from the common law, and not from the statute. All that the statute supplies is the mode of administering the insolvent estate under the assignment. But these provisions of the statute, which have for their sole object the distribution of the estate among the creditors *pro rata*, in the most economical and expeditious manner, are nothing but what the assignment itself might contain and express. In that case, the case would become merely one of a private trust, needing no help from any statute, and which could be enforced by a court of equity like any other trust. These assignments are generally, perhaps always, made in express terms " under the statute," &c., which is equivalent to an incorporation of all the provisions of the statute in the assignment itself; in which case the trust would be complete without any aid from the statute, and the settlement of the insolvent estate would proceed under the trust thus created precisely as under the statute, except that what is now done under orders of the court of probate, would be done under the terms of the trust, and under the supervision of a court of chancery. The debtor may, if he and the creditors can agree, make a distribution of his effects without the aid of law. Such a transaction would not be adjudged illegal. He may, so far as he is concerned, permit his property to be taken by process of attachment under a state law, and thereby prevent a distribution of his effects by the bankrupt act; yet it will not be contended that the operation of all attachment laws is suspended. Upon the same principle we see no reason why he may not distribute his effects through the instrumentality of the insolvent laws of the state, so long as the rights of creditors are not thereby prejudiced. The record discloses nothing to indicate that creditors will suffer unjustly from this proceeding. We

cannot say as matter of law that the assets of the debtors can be administered more economically or expeditiously in the United States courts than in the state courts. It is true cred itors took this appeal. What motive induced them to do so does not appear. It is suggested however that a lien in their favor, created by attachment, was dissolved by the assign ment. If so, and the assignment is invalidated and the lien preserved, they thereby gain an advantage over other credit ors. As that would contravene the policy of the bankrupt act, as well as of our own law, we should hardly feel disposed to sanction the appellants' claim, as applied to this case, unless the law rigidly demanded it. Under the circumstances we think that such an assignment as the one here in question may be sustained, without deciding that a state insolvent law authorizing an assignment in insolvency, which would be unauthorized without the statute, would not be suspended by the United States bankrupt act.

Since this case was argued our attention has been called to a decision by Judge Nelson, in the Circuit Court of the United States for the southern district of New York, having an im portant bearing upon the question now under consideration. The case was *John Sedgwick, assignee,* v. *James K. Place and others,* reported in the Weekly Bankrupt Register, vol. 1, p. 204, (June 29, 1868). In that case the bankrupts, being insolvent, suspended payment November 20, 1867, and soon after made an assignment of their property to trustees for the benefit of all their creditors under a statute law of the state of New York. In February following they applied by peti tion for the benefit of the bankrupt act. They were adjudged bankrupts and an assignee was appointed. The assignee filed his bill against the assignees under the state law, praying that the assignment under the state law be set aside, and the assignees render an account to the assignee in bankruptcy, and that they be restrained from any further execution of the trust. The court, in dismissing the bill, says: " We find nothing in the provisions of the law which would authorize us to take this property out of the hands of the assignees un der the state law and turn it over to the assignee in bank-

ruptcy, and must therefore deny the motion for a preliminary injunction."

It does not appear clearly from the report of that case, but we suppose the fact to be, that the respondents were not acting under the insolvent laws of the state of New York, but under another act, regulating private trusts created by the act of parties for the benefit of creditors. But, viewing our law as practically a system introduced for the purpose of sequestering the effects of an insolvent debtor and distributing the avails *pro rata* among creditors, and considering that the action of the court of probate in the decrees appealed from is not inconsistent with this view, we have no difficulty in bringing the case within the ruling of Judge Nelson.

On the whole we are inclined to the opinion that the proceedings in the case now before us are not in conflict with the bankrupt act. We therefore advise the superior court that the reasons for appeal are insufficient.

In this opinion the other judges concurred.

NOTE. As the opinion of Judge Nelson in the case of *Sedgwick, assignee*, v. *Place and others*, referred to in the foregoing opinion of Judge Carpenter, is not to be found in any book of reports, and is one of much importance in its relation to the very interesting question involved in the foregoing case, it is here inserted in full.

NELSON, J. The bill is filed in this case by an assignee in bankruptcy to compel the defendants, L. W. Burnett, Jr., and Thomas T. Sheffield, to deliver into his possession certain property and -assets, which are claimed as belonging to the estate of the bankrupts, and which have become vested in him under and by virtue of the proceedings in bankruptcy.

The case as presented in the papers is this: The bankrupts suspended payment of their debts, being insolvent, the 20th of November, 1867, and several suits having been instituted against them, with a view to an equal distribution of their assets among all their creditors, made an assignment of all their property, real and personal, to the defendants, in trust to convert the same into money and pay their debts, and in case the fund fell short of paying all their debts, that it should be distributed equally among all of the creditors *pro rata*.

The assignment was made and executed under and by virtue of the statute of the state of New York relative to general assignments by insolvent debtors for the benefit of their creditors. It was duly recorded in the office of the clerk of the city and county of New York, and within the time prescribed the assignors made and filed under oath a full and complete inventory of all their estates, real and personal, and of all their debts and liabilities.

The assets were large, and the assignees were required to enter into bonds, with good and sufficient security, for the faithful discharge of their trust, to the amount of $320,000. The assignees are engaged in the execution of their trust, and have already in deposit in the United States Trust Company, some $45,000, awaiting distribution among the creditors.

At the time of this assignment the insolvent debtors had no intention or expectation of applying for the benefit of the bankrupt act, nor had the assignees any reason for the belief that any such intention existed. All intention to defraud creditors or to prevent the property of the debtors coming to an assignee in bankruptcy, is denied by the parties, and there is no proof in the case to the contrary.

The insolvent debtors not being able to make a settlement with their creditors, and apprehending that the provisions of the bankrupt act might cease relative to voluntary applications, unless by the assent of the creditors, or the payment of fifty cents on the dollar, applied in February following by petition for the benefit of the act, and were adjudged bankrupts as copartners on the 7th of that month.

The motion upon this state of the facts is, that the assignment under the state law be set aside, and the assignees render an account to the complainant as assignee in bankruptcy, and that they be restrained from any further execution of the trust.

Assuming the assignment in question to be untainted with fraud, either against creditors or against the bankrupt act, which is the present position of the case, we find nothing in the provisions of the law which would authorize us to take this property out of the hands of the assignees under the state law, and turn it over to the assignee in bankruptcy, and must therefore deny the motion for a preliminary injunction.