THOMAS BOESE as RECEIVER, ETC., OF WILLIAM H. LOCKE, RESPONDENT, v. WILLIAM H. LOCKE AND WILLIAM KING AND OTHERS, AS ASSIGNEES, ETC., OF WILLIAM H. LOCKE, APPELLANTS.

*Assignments for the benefit of creditors — when a State insolvent law is suspended by the U. S. bankrupt act.*

A statute of New Jersey entitled "an act to secure the creditors an equal and joint division of the estate of debtors who convey to assignees for the benefit of creditors" provided, among other things, that any creditor who shall fail to exhibit his claim, within three months after the time designated therefor, shall (except in one certain event therein specified) be barred from receiving any dividend from the estate assigned, and that all creditors presenting their claims shall be barred from afterwards maintaining any action at law or suit in equity against the debtor, unless they shall prove fraud in the assignment or a concealment by him of his property. The debtor was not, however, discharged by the act from his liabilities to those of his creditors who did not present their claims.

*Held*, that this act operated as an insolvent law.

(2.) That as such, it was suspended, upon the passage by Congress of the United States bankruptcy act.

(3.) That as it operated on all assignments made in New Jersey, an assignment there made for the benefit of creditors, while the bankrupt act was in force, was void. (DAVIS, P. J., dissenting.)

APPEAL from a judgment, entered upon the trial of this action by the court without a jury, setting aside an assignment for the benefit of creditors, executed under and pursuant to the statute of New Jersey, by Wm. H. Locke to the other defendants, and directing them to pay the judgment in this action.

*A. P. Whitehead* and *M. W. Divine*, for the appellants. There is nothing whatever in any of its provisions which can be fairly claimed to render the law a bankrupt or insolvent law. Reading the assignment, then, in connection with the statutory provisions to which it refers, we submit that it is, in effect, nothing more than a common law assignment. (*Mayer* v. *Hellman*, 1 Otto, 496; Genl. Stats. of Conn., p. 385, § 32, subd. 3; *In re Hawkins*, 34 Conn., 548; *Maltbie* v. *Hotchkiss*, 38 id., 80; *Beck* v. *Parker*, 65 Penn., 262; *Thrasher* v. *Bentley*, 59 N. Y., 649, more fully reported in 1 Abb. New Cases, 39; *Haas* v.

*O'Brien*, 66 N. Y., 597; *Shepardson's Appeal*, 36 Conn., 23; *In re Winternitz*, 4 B. R., 127; *Cook* v. *Rogers*, 13 N. B. R., 97; *Reed* v. *Taylor*, 4 id., 710; *Ex parte Tiegenferss*, 2 Ired. [N. C.], 463; *Bostwick* v. *Burnett*, Ct. App. [18 Alb. L. J., 418].) Even if the fourteenth section is repugnant to the bankrupt law, it is nevertheless the only part of that statute which can be claimed to be so; and if the bankrupt law have any effect upon that statute, it must be limited to that fourteenth section. (*Vide* authorities above cited; and, also, Burrill on Assignments [3d ed.], § 47 p. 59; *Ex parte John Zeigenfuss*, 24 N. C., 463; *Barber* v. *Rogers*, 71 Penn., 362; *Glenn* v. *Humphreys*, 4 Wash. C. C. R., 424; *Fisher* v. *M'Girr*, 1 Gray, 22; *Commonwealth* v. *Kimball*, 24 Pick., 361; *Morris* v. *Boston*, 4 Met., 288; *Ely* v. *Thompson*, 3 Wash. C. C. R., 313; *Gibbins* v. *Ogden*, 9 Wheat., 1; *City of New York* v. *Miln,* 11 Pet., 102.) If a State statute infringes the provisions, either of the Constitution of the United States, or of the State, " it is so far void." (1 Kent, 449; *People* v. *Platt*, 17 Johns., 195; *Sturges* v. *Crowninshield*, 4 Wheat., 122; *Cohen* v. *Virginia*, 6 id., 414; *McMillan* v. *McNeill*, 4 id., 409; *Gibbons* v. *Ogden*, 9 id., 207.)

*C. Bainbridge Smith*, for the respondent. The bankrupt law of the United States, upon going into operation, suspended all action upon future cases arising under the State insolvent laws, and all proceedings under the latter, while such bankrupt law exists, are null and void. (*Griswold* v. *Pratt*, 9 Metc. R., 16; *Judd* v. *Ives*, 4 id., 400; *Ex parte Eames*, 2 Story R., 322; *S. C.*, N. Y. Legal Obs., 212; *In re Holmes*, id., 211; *S. C.*, 5 Law R., 360; *Ex parte Jacobs*, 12 Abb. [N. S.], 273; *Van Nostrand* v. *Carr,*, 30 Maryl. R., 128; *Martin* v. *Berry*, 37 Calf., 208; *Commonwealth* v. *O'Hara,* 6 Am. L. R., 765; *Day* v. *Bardwell*, 97 Mass. R., 246; *In re Reynolds*, 8 R. I. R., 485; *Chamberlin* v. *Perkins*, 51 N. H., 336; *Mayer* v. *Hellman*, 1 Otto R., 496; *Sturgis* v. *Crowinshield*, 4 Wheat., 122; *Ogden* v. *Saunders*, 12 id., 496.) The statute of New Jersey under which the assignment in question was executed is both an insolvent and a bankrupt law. (Burrill L. Dic., title Bankrupt Law; id., Insolvent Law; 2 Steph. Com., 189–193; *Wilson* v. *Day*, 2 Burr, 829; 1 Dana Abridg., 317; *Sackett* v.

*Andross,* 5 Hill R., 331–341.) It acts upon the person as well as upon the property of the debtor, and this is the characteristic feature which distinguishes an insolvent or bankrupt law from a law merely regulating the disposition of the debtor's property. (*Griswold* v. *Pratt,* 9 Metc., 16, and cases cited, *supra.*) The assignment in question is fraudulent and void under the laws of the State of New York. The statute, under which it is made, is equivalent to a stipulation for a release, as a condition of receiving a benefit under it, and the surplus is to be returned to the debtor, in exclusion of non-releasing creditors. (*Hyslop* v. *Clark,* 14 J. R., 458; *Austin* v. *Bell,* 20 id., 442, 448; *Wakeman* v. *Grover,* 4 Paige, 23, 36, 38; *S. C.,* 11 Wend., 187, 202, 205; *Goodrich* v. *Downs,* 6 Hill, 438; Burrill on Assignments, 2 Ed., 175.) A statutable conveyance made under the authority of any Legislature cannot operate on any property except that which is within its own territory. (Story on Confl. of Laws, §§ 414–416.) The proceeds of the assigned property are within this State, and they are subject to its laws. (*Kelly* v. *Crapo,* 45 N. Y. R., 86; *Varnum* v. *Camp,* 1 Green, 326; *Moore* v. *Bonnell,* 2 Vroom, 90; *Bentley* v. *Whitemore,* 19 N. J. Eq., 462; *Gillman* v. *Howell,* 35 N. Y. R., 657; *Ingraham* v. *Geyer,* 13 Mass., 146; *Zipsey* v. *Thompson,* 1 Gray, 243.)

BRADY, J.:

On the 23d September, 1875, the defendant Locke made and delivered to the other defendants an assignment of his property, in trust, to take possession of and collect, and to sell and dispose of the same, at public or private sale, in their discretion, and to distribute the proceeds to and among the creditors of the assignor in proportion to their several just demands, pursuant to the statute in such case made and provided. The defendant Locke was at the time of the assignment a resident of New Jersey, and the statute referred to in the clause quoted was one of that State passed April 16, 1846, entitled " an act to secure the creditors an equal and just division of the estate of debtors, who convey to assignees for the benefit of creditors." The statute provides, among numerous other things, that if any creditor shall not exhibit his, her, or their claim within the term of three months after the

time designated therefor, such claim shall be barred of a dividend, unless the estate shall prove sufficient after the debts exhibited and allowed are fully satisfied, or such creditors shall find some other estate not accounted for by the assignee or assignees, before distribution, in which case such barred creditor shall be entitled to a ratable proportion therefrom. (Section 11.) It also provides by section fourteen that although nothing in the act shall be taken or understood as discharging the debtor or debtors from liabilities to their creditors who may not choose to exhibit their claims, either in regard to the persons of such debtor, or to any estate, real or personal, not assigned, yet with respect to the creditors who shall come in under the assignment and exhibit their demands for a dividend, they shall be wholly barred from having afterwards any action or suit at law, or in equity against such debtor or their representatives, unless they shall prove fraud on the part of the debtor " with respect to the assignment, or concealing his estate, real or personal, whether in possession, held in trust or otherwise." It will be perceived on examination of these provisions that they are at utter variance with the effect of a common law assignment for the benefit of creditors, either with or without preferences. In the first place the assigned estate is given to the creditors who come in and prove their claims, to the exclusion of the others, until the debts of the former class, allowed, are fully satisfied, unless a creditor who did not present his claim shall find some other estate not accounted for by the assignee or assignees before distribution, in which case such barred creditor shall be entitled to a ratable proportion therefrom. In the next place it is declared that the creditors who shall come in under any assignment and exhibit their demands for a dividend shall, as we have seen, be wholly barred from having any action, unless upon proof of fraud " with respect to the assignment, or concealing his estate, real or personal, whether in possession, held in trust, or otherwise." The estate is therefore by the statute distributed among the creditors, only who exhibit their claims for a dividend, and not generally; and upon those who receive the *pro rata* distribution, the statute operates as a release, and forever bars their remedy against the person and estate of the debtor or assignor. This is the condition upon which the creditor is paid his portion of the estate. These

inhibitory and prohibitory provisions are not the characteristics of a common law assignment for the benefit of creditors. Such an instrument must be absolute and unconditional, imposing no coercive terms upon creditors for the advantage of the assignor as the condition of receiving its benefits. (Burrill on Assignment, 256, and numerous cases cited.) The statutes relating to insolvency, generally, and indeed uniformly provide either for the exoneration of the debtor from imprisonment, or from his debts on executing the assignment prescribed by the statute under which his application is made. No debtor could make a valid assignment at common law which would exact from the creditor a discharge, either relating to the person, property or liability of the debtor, as a condition of receiving a portion only of his debt, and the statute under consideration tested by that rule cannot be regarded as other than an insolvent law by which persons, unable to pay their debts, can secure immunity from prosecution by such of their creditors as accept a stipend under a distribution of the assigned estate among creditors. No debtor would be allowed either to declare, by way of assignment, that unless his creditors presented their claims within a certain time his estate should be given to those who came in within the period limited, and judged by this test the statute is an insolvent law designed to accomplish, what the debtor could not effect by any act of his own. In the elements of a prescribed period for the presentation of claims and the discharge provided for, the statute referred to assimilates to the insolvent laws of this State, and of the States of the Union in general. The statute in effect prohibits any assignment which is not to be followed by the results stated. It does not in express terms, but does by necessary implication, and accomplishes in that mode the prohibition. It declares that every assignment shall be made for the equal benefit of creditors, in the proportion of their several demands to the net amount that shall come to the hands of the assignee for distribution and prohibits preferences; and then provides what shall be done in relation to such assignments, including the provisions in the sections already stated and discussed. The effect is to compel an assignment in a particular mode, and to arrange the distribution of the property assigned, and the consequences of such distribution to debtor and creditor. It is true that no one is com-

pelled to present his claim ; but that does not at all affect the character of the statute, because the conditions of acceptance remain and its coercive feature still exists. The question then springing from this view is whether the assignment is void, as in contravention of the bankrupt law which suspended the insolvent laws of the several States. The assignment, it is found by the court below, was made in good faith and without any intent to hinder, delay or defraud creditors, and with the intent *bona fide* to make an equal distribution of the proceeds of the assigned estate among the creditors of the assignor, in conformity with the requirements of the Legislature. It may be said in addition that it was made in the only mode allowed by law in New Jersey, where it was executed. The precise question suggested has not been disposed of by the court of last resort in this State. It was held in *Thrasher* v. *Bentley* (59 N. Y. R., 649) that an assignment for the benefit of creditors by an insolvent debtor which gave no preferences, no proceedings in bankruptcy having been taken against him, was not void as in hostility to the bankrupt law, and this adjudication was a result declared, conceding the law of 1860 of our own State to be suspended by the bankrupt law, and for the reason that an assignment for the benefit of creditors was not created by the act of 1860, but existed at common law.

The decision of the Supreme Court of Connecticut in *Hawkins's Appeal* (see 34 Conn., 548) was approved. In the later case of *Haas* v. *O'Brien* (66 N. Y. Rep., 597) it was again declared that such an assignment made in good faith, without intention to defeat the object, impair or impede the operation, or evade any of the provisions of the bankrupt act, and which transferred all of the insolvent's property without preference, was not a violation of the spirit and intent of said act, and was not *void per se*.

It was also held in that case, that the validity of an assignment was not affected by the fact that proceedings in bankruptcy were taken against the assignor within six months, and that the bankrupt act was not intended to interfere with the action of a debtor who, in good faith, without any fraudulent intent, voluntarily sought to apply his property to the payment of his debts in equal proportion, precisely as it would have been applied had proceed-

ings been taken under that act. (See, also, the latest case, *Bost-wick* v. *Burnett*, 18 Alb. Law Jour., page 418, to same purport.) In these cases the distinction between an insolvent act of the Legislature, *per se*, and an act regulating to some extent a voluntary assignment for the benefit of creditors was not discussed ; indeed, was not at all considered. It was not necessary that it should be, because the sphere of such an instrument was not enlarged, and there was no new force or effect given to it by the statute which related to its form and execution merely and not to its effect. The question was not discussed or considered either by the Supreme Court of Connecticut in *Hawkins's Appeal* (*supra*), nor in the case of *Maltbie* v. *Hotchkiss* (38 Conn., 80), but seems to have been considered and disposed of in the case of *Geery's Appeal* (43 Conn., 289) by a divided court, in which one of the judges concurred, with hesitation, in the judgment pronounced, and from which two of them dissented. It was conceded that the question was a close one, by no means free from doubt and difficulty, and that there was a conflict of decisions upon the general subject of the effect of the bankrupt act in reference to acts of insolvency. In the case of *Shepardson's Appeal* (36 Conn., 23), which was an appeal from a decree of a probate court appointing a trustee in insolvency on the estate of the appellant, in insolvent proceedings against him by his creditors under the insolvent law of the State, PARK, J., stated in his dissenting opinion that if the debtor owed more than $300 (which was the lowest sum fixed for the application of the bankrupt act), the majority of the court conceded that the probate court had no jurisdiction of the case, because the bankrupt act then applied and suspended the insolvent act in cases of involuntary insolvency.

The question discussed seems to have been more distinctly presented in that case, than any of the other cases in Connecticut to which our attention was called. These adjudications are considered with more particularity because they were more prominently relied upon, with the exception of the case of *Meyer* v. *Hellman*, to which reference will be made, and were more prominently presented upon the argument than any other.

The writer of this opinion had occasion to examine a kindred question, and upon the consideration of the authorities, which

were found to be conflicting, arrived at the conclusion that the power conferred upon Congress by the Constitution to establish a uniform system of bankruptcy throughout the United States, having been exercised by the enactment of a law for that purpose, on the 2d of March, 1867, that law became paramount and exclusive, and suspended the operation of the insolvent laws of this State over all cases within its purview. (See *Shears* v. *Solhinger*, 10 Abb. [N. S.], 287, and cases cited.) It was stated in the case just mentioned that the converse of these propositions, if declared, might lead to conflicts between the State and Federal authorities in the administration of their powers over the same subject-matter in reference to which both had the right to legislate, and that the State law yielded therefore. In the case (*supra*) decided by our Court of Appeals, as already suggested, the distinction between an insolvent law *per se*, and an act of insolvency, voluntary on the part of the debtor, and controlled by the rules of the common law, was not discussed. In the case in the 10th Abbott (*supra*), the question was distinctly presented, because the debtor had obtained a discharge from his debts under an insolvent law of this State known as the "two-third act," and which provides for a voluntary application by an insolvent, aided by consent of his creditors to the amount of two-thirds of his indebtedness, and the discharge obtained in which, not only as to them, but as to the other third not assenting, operates as a release of the debts due. It may be here observed that the statute of Connecticut, on the subject of voluntary assignments for the benefit of creditors, does not contain provisions kindred to those found in the statute of New Jersey, to which reference has already been made, and by which the whole subject, namely, the assignment and the disposition of the assigned assets, and the consequences, are regulated and determined. The case of *Mayer* v. *Hellman* (1 Otto, 496) does not sustain the appellant's view. The assignment considered in that case was one made for the benefit of creditors in the State of Ohio, and it appeared that there was a statute in that State regulating the mode of administering assignments for the benefit of creditors. It was held, however, that that statute did not in terms compel, or even authorize assignments, but assumed that such instruments were conveyances previously known, and pro-

vided only a mode by which the trust should be executed ; and, further, that there was nothing in the act resembling an insolvent law. It did not discharge the insolvent from arrest or imprisonment, and left his after-acquired property to his creditors precisely as though no assignment had been made. It was said, indeed, that the provisions for enforcing the trust were such as a court of chancery would apply in the absence of any statutory provision, and further that the assignment must be regarded as though the *statute of Ohio had no existence.* There is a wide difference therefore between the act of the Legislature of New Jersey and that of Ohio, as we have seen.

There is no doubt, as suggested by the Supreme Court in Connecticut, that the subject discussed is not free from difficulty, and that there are conflicts in the adjudications relating to it ; but nevertheless, for the reasons assigned, the conclusion seems to be inevitable that an insolvent law, created by act of the Legislature, in regard to assignments for the benefit of creditors, such as the statute of New Jersey (*supra*), is in conflict with the bankrupt law of the United States.

For these reasons the judgment must be affirmed.

With some hesitation I concur, INGALLS, J.

DAVIS, P. J., dissented.

Judgment affirmed.