CASE 56—PETITION FOR MANDAMUS—FEBRUARY 17.

## Trustees of Owensboro vs. Webb.

APPEAL FROM DAVIESS CIRCUIT COURT.

1. The 41st section of the 4th article of the constitution was intended to relate exclusively to such police courts as had been established in any city or town prior to the adoption of the constitution, and fixes definitely and certainly the time and manner of electing the judges, clerks, and marshals of such courts beyond the power and control of the legislative authority.

2. The local tribunal created and established by the 12th section of the act of February 28, 1850, which authorizes the governor to appoint "a judicial officer to be styled the police judge of Owensboro," with the powers and jurisdiction conferred by that section, is a "*police court*," within the meaning of the 41st section of the 4th article of the constitution; and the marshal whose duties and powers are defined by the 11th section of the act, is a marshal of such court, and is embraced by the same constitutional provision, and the legislature has no power to change or alter in any respect, either the time or manner of electing this officer, as definitely prescribed by the constitution.

3. Those officers whose qualifications, terms of office, and time and manner of whose election had been prescribed by section 41, article 4 of the constitution, must be excepted out of the operation of the 6th section of article 6. The latter section was intended to refer to all officers of towns and cities whose offices might be created or established by law, after the adoption of the constitution.

4. The act of 1854, providing that the marshal of the town of Owensboro shall be elected on the first Monday of April in each year, is unconstitutional. His election must take place at the same time that sheriffs are elected, and he must enter upon the discharge of his official duties at the same time that sheriffs do, and hold his office for the same term.

5. A marshal of the town of Owensboro elected at the general election in August, 1858, could not enter upon the duties of his office until the succeeding first Monday in January. (*Constitution, art. 4, sec. 41; Ib., art. 6, sec. 4.*)

JNO. M. HARLAN, for appellants, cited *Constitution, art. 4, sec. 41; Ib., art. 4, sec. 1; Ib., art. 6, sec. 6; Act in relation to Lexington City Court of 25th February,* 1842, *Sess. Acts 1841–2, page* 260; *Ib., February 10,* 1845, *Sess. Acts, 1844–5, page 196–7; Act relating to Louisville City Court, Sess. Acts 1835–6, page 280; Act relating to police judge of Owensboro, Sess. Acts 1849–50, p. 204;* 3 *Bouvier's Inst.,* 68.

JOHN H. MCHENRY, on same side, cited *Sess. Acts 1849–50, page* 203; *Sess. Acts 1853–4, page 503; Constitution, art. 6, sec. 4.*

YEAMAN & SWEENEY, for appellee, cited *Constitution, sec. 41,*

*art.* 4; *Ib., sec.* 4, *art.* 6; *Ib., sec.* 9, *art.* 6; 17 *B. Mon.,* 786; *Rev. Stat.,* 300; *Sess. Acts* 1849–50, *page* 204; *Sess. Acts* 1853–4, *page* 503.

JUDGE DUVALL DELIVERED THE OPINION OF THE COURT:

By the provisions of " an act to amend and reduce into one the several acts concerning the town of Owensboro," approved February 28, 1850, (*Session Acts,* 1849–50, *p.* 199,) the Governor is authorized to appoint " a judicial officer, to be styled the police judge of Owensboro, who shall be commissioned as such during good behavior," and to exercise the jurisdiction usually conferred on police judges; he is to have exclusive jurisdiction within the town of all offenses against its by-laws and ordinances, and executions issued by him " may be served by the marshal of said town or his deputy," &c.

The act also gives the trustees power to appoint a marshal; and in the enumeration of his powers and duties, he is required to "execute all process which may be requisite for the enforcement of the by-laws and ordinances of said town."

By the subsequent act of 1854, (*Session Acts, p.* 503,) it is provided that " the election of marshal for the town of Owensboro shall be held on the same day, at the same time, and at the same place, that the election of trustees for said town is held." The first Monday in April in each year is the day fixed for the election of trustees; and accordingly, on the first Monday in April, 1857, an election for marshal was held, when W. S. Brittain was duly elected, who has since been discharging the duties of that office, no election having been held in April, 1858.

But at the general election in August, 1858, the appellee, Webb, was voted for, for the office of marshal, received a certificate of his election in regular form, tendered to the board of trustees the bond required by law, with sufficient security, and offered to qualify; but the trustees refused to permit him to do so. He thereupon filed this petition, in which the fore-going facts are substantially alleged. He charges that the act under which Brittain was elected is unconstitutional, and prays that a writ of mandamus issue against the trustees commanding them to accept his bond, and to permit him to qualify as

marshal, and to be allowed to execute the duties of that office, and that Brittain be enjoined from the further execution of the duties of the office, and from receiving the fees and emoluments thereof.

The trustees answered, admitting the material facts charged, but they insist that the election of Webb was without legal authority, and is therefore void ; that Brittain was duly elected marshal of Owensboro in April, 1857, and that, by operation of law, he holds the office until his successor shall have been duly elected and qualified. They deny that the act under which Brittain was elected is unconstitutional.

The circuit court having awarded the writ of mandamus according to the prayer of the petition, the trustees and Brittain have prosecuted this appeal.

It is apparent from the facts stated that this controversy must turn exclusively upon the constitutional validity of the act of 1854, *supra*, under the provisions of which Brittain was elected to the office in contest.

The clause of the constitution with which the act referred to is supposed to be in conflict is as follows :

" The city court of Louisville, the Lexington city court, and all other *police courts* established in any city or *town*, shall remain until otherwise directed by law, with their present powers and jurisdictions; and the judges, clerks, and *marshals* of such courts shall have the same qualifications, and shall be elected by the qualified voters of such cities or towns, *at the same time*, and in the same manner, and hold their offices for the same term, as county judges, clerks, and sheriffs, respectively, and shall be liable to removal in the same manner. The general assembly may vest judicial powers, for police purposes, in mayors of cities, police judges, and trustees of towns." (*Sec.* 41, *art.* 4.)

It is manifest that this provision was intended to relate exclusively to such police courts as had been established in any city or town, prior to the adoption of the present constitution. And it is no less clear, we think, that it was intended to, and does fix, definitely and certainly, the time and manner of electing the judges, clerks, and marshals of such courts, beyond the

power and control of the legislative authority. The words "shall remain until otherwise directed by law," evidently mean nothing more than that the several tribunals enumerated, with the legal organizations, functions, powers, and jurisdictions which they then had, should remain until otherwise directed by law. There is nothing in the language itself, or in the grammatical structure of the sentence in which it is found, to authorize the assumption that the time and manner of electing the several officers of such courts, were intended to be subjected to the future direction of the legislature.

It cannot be doubted that the local tribunal created and established by the 12th section of the act of 1850, *supra*, which authorizes the governor to appoint "a judicial officer, to be styled the police judge of Owensboro," with the powers and jurisdiction conferred by that section, is a "*police court,*" within the meaning of the clause of the constitution which has been quoted. Nor can it be doubted that the marshal, whose duties and powers are defined by the 11th section of the act, is a "marshal of such court," and must, therefore, be regarded as embraced by the same constitutional provision, the act in question having been passed prior to the adoption of the present constitution. This point cannot be made clearer by argument.

From what has been said, it results that the legislature had no power to change or alter, in any respect, either the time or manner of electing this officer, both the time and the manner having been definitely prescribed by the constitution itself.

But it is insisted that the validity of the act of 1854 is maintainable under the 6th section of article VI of the constitution, which provides that "officers for towns and cities shall be elected for such terms, and in such manner, and with such qualifications as may be prescribed by law."

Although the terms of this provision might be regarded as comprehensive enough to embrace all officers for towns and cities, yet it is obvious that those officers whose qualifications, terms of office, and the time and manner of whose election had been prescribed by section 41, must be excepted out of the operation of the sixth section. And moreover, it is clear that

the latter section was also intended to refer to all officers of towns and cities whose offices might be created or established by law, after the adoption of the constitution.

· This construction harmonizes the two sections, which otherwise would directly conflict with each other.

But it is manifest that the appellee, although legally elected to the office in question, was not entitled to the relief which was awarded him by the judgment complained of.

As already stated, he was elected in August, 1858; and by the clause of the constitution before quoted, the officers therein enumerated are required to have the same qualifications, " and shall be elected by the qualified voters of such cities or towns, at the *same time*, and in the *same manner*, and hold their offices for the *same term*, as county judges, clerks, and *sheriffs*, respectively."

Section 4, of article VI, of the constitution, provides that the sheriff's term of office shall be two years; that elections for sheriff shall be held on the first Monday in August, 1852, and on the first Monday of August in every second year thereafter; and that " the sheriffs first elected shall enter upon the duties of their respective offices on the first Monday in June, 1851; and after the first election, *on the first Monday in January next succeeding their election.*"

These constitutional provisions are so explicit and plain as to remove all doubt with respect to the terms for which sheriffs and marshals are to be elected, and with respect to the time at which those terms begin and end, by fixing the day on which such officers are to enter upon the duties of their respective offices. As was said in the case of *Hall vs. Hostetter*, (17 *B. Mon.*, 786,) " it was evidently contemplated by the constitution that sheriffs and marshals shall be eligible under the same circumstances, and hold their offices for the *same term;*" and that in these respects they are placed on a footing of perfect equality.

The construction contended for on the part of the appellee, and which would allow him to enter upon the duties of the office of marshal in the month of September next succeeding his election, is clearly unwarranted; and the judgment which

required the appellants to permit him to qualify and to enter upon the duties of the office before the first Monday in January next succeeding his election, was erroneous.

And inasmuch as the appellants were in no default, and the appellee was entitled to no relief at the time his petition was filed, or at the time the judgment was rendered, the petition should have been dismissed.

The judgment is therefore reversed, and the cause remanded, with directions to dismiss the petition.