(Decided 22nd June, 1875.)

---

ELIZABETH T. LAVENDER'S Lessee *vs.* LEMUEL W. GOSNELL and EPHRAIM W. TRIPOLETT.

*Act of* 1834, *ch.* 293, *sec.* 2— *Title vested in Trustee in Insolvency, not divested by subsequent discharge in Bankruptcy.*

T. O'D. in March, 1840, applied for the benefit of the insolvent laws, and obtained his discharge in January, 1841. In March, 1842, he applied for the benefit of the Bankrupt Law of the United States, which went into effect on the 1st of February previous, and obtained his final discharge in August, 1842. The list of debts furnished by the bankrupt did not include any filed in the insolvency proceedings, and the assets of the insolvent

being insufficient to pay the creditors named in the insolvency proceedings, balances of their claims remained unsatisfied at the time of the filing of the petition in bankruptcy. In 1843, T. O'D., as heir-at-law, became entitled to an interest in certain lands. In October, 1861, M. T. G. was appointed trustee in the insolvency proceedings, and as such trustee, conveyed T. O'D's interest in the lands to L. W. G. and E. W. T. who took possession. Afterwards, in May, 1864, T. O'D. conveyed all his interest in said lands to E. T. L. in trust, who brought ejectment against L. W. G. and E. W. T. HELD:

1st. That the title to the lands devolved upon the insolvent trustee under the Act of 1834, ch. 293, sec. 2.

2nd. That the discharge of the insolvent under the Bankrupt Law did not defeat the title of the insolvent trustee.

APPEAL from the Circuit Court for Baltimore County.

This was an action of ejectment brought by the appellant against the appellees.

The facts are sufficiently given in the opinion of the Court.

*Exception* —The plaintiff offered the following prayer which the Court, (GRASON and YELLOTT, J.,) refused:

If the jury find the execution and delivery of all the deeds offered in evidence, and that Elizabeth Towson, prior to 1831, married Isaiah O'Dell, and died intestate in December, 1843, leaving surviving her, her said husband and six heirs-at-law, of whom Thomas T. O'Dell was one, and that the said Isaiah O'Dell, died in March, 1847, and that the said Thomas T. O'Dell made application for the benefit of the insolvent laws of Maryland on the 16th of March, 1840, and received his personal discharge on the 1st of January, 1841, and that he applied for the benefit of the United States Bankrupt Law on the 28th of March, 1842, and was finally discharged thereunder, on the 8th of August, 1842, then the plaintiff is entitled to recover the one-sixth part of Wilmott's Meadows, although they may find that the list of creditors

named in the bankruptcy proceedings do not embrace any of the creditors named in the insolvency proceedings.

The plaintiff excepted to the rejection of his prayer, and the verdict and judgment being against him, he appealed.

The cause was argued before BARTOL, C. J., STEWART, BRENT, and ALVEY, J.

*M. R. Walter* and *James Pollard*, for the appellant.

The only question to be determined upon this appeal, is the effect of O'Dell's discharge under the Bankrupt Law of 1841, upon that provision of the Insolvent Law of Maryland, (Act 1834, ch. 293, sec. 2,) which provides that "all property within the intent of the fifth section of the Act passed at November session of the year 1805, ch. 110, that shall be acquired by or accrue to the insolvent debtor by gift, descent, &c., shall be deemed and so distributed and applied as estate of said insolvent debtor, for the benefit of his creditors at the time of his application."

The power "to establish uniform laws on the subject of bankruptcies throughout the United States," is conferred upon Congress by the Constitution, Art. 1, sec. 8, and it has been settled by the Supreme Court, and by the Courts of the several States, that when this power has been exercised, it is *paramount, supreme and exclusive,* and suspends the operation of the insolvent laws of a State, over cases falling within the purview and operation of the Bankrupt Law. *Van Nostrand vs. Carr,* 30 *Md.,* 131; *Story on the Constitution, sec.* 1114; *Sturgis vs. Crowninshield,* 4 *Wheaton,* 122; *Meekins vs. Creditors,* 19 *La. Ann.,* 497.

The enactment of the Bankrupt Law, having *ipso facto* repealed the insolvent laws of the State, no new proceedings thereunder could take place, or new rights be acquired. No interest in the land could therefore vest in

the trustee in insolvency, as O'Dell acquired the interest by descent in December, 1843, and the sale to the appellees therefore passed no title.

Furthermore, O'Dell by his discharge under the Bankrupt Law, was released from all debts and claims existing at the time his petition was filed, whether they were or were not included in the schedule of debts filed by the bankrupt in the bankruptcy proceedings. *Shelton vs. Pease*, 10 *Mo.*, 478; *Burnside vs. Brigham*, 8 *Metc.*, 77; *Downer vs. Dana*, 22 *Verm.*, 339; *Brown vs. Rebb*, 1 *Rich*, (*So. Ca.*,) 377; *Campbell vs. Perkins*, 8 *N. Y.*, 439; *Mitchell vs. Singletary*, 19 *Ohio*, 291; *Rogers vs. Western M. & F. Ins. Co.*, 1 *La. Ann.*, 161; *Small vs. Graves*, 7 *Barb.*, 578.

A State insolvent law cannot provide for the acquisition of rights by the creditors in the future, so as to override the provisions of a *uniform Bankrupt law* of the United States. If it can do so in one, it can do so in every particular, and the Bankrupt law far from being the paramount law of the land, would be subordinated to State legislation.

The question was passed upon by the Court of Appeals of Louisiana, under its insolvent laws which contains a provision similar to ours in reference to after acquired property, and the Court there held that the discharge under the Bankrupt law, discharged the debtor and deprived the creditors of all claim to property acquired by the insolvent after the institution of bankruptcy. *Beach vs. Miller*, 15 *La. Ann.*, 601–2.

*D. G. McIntosh* and *A. W. Machen*, for the appellees.

Any title that descended in December, 1843, to Thomas T. O'Dell, instantly vested in his insolvent Trustee, by virtue of the Act of 1834, ch. 293, sec. 2, under which he had received a discharge in January, 1841. This operation of the State insolvent law, in favor of the creditors

whose debts were discharged in consequence of it, was not impaired by the intervening Bankrupt Act of the United States, which went into effect on the 1st of February, 1842, and was *repealed* on the 3rd of *March*, 1843 : and therefore, his voluntary deed made in 1864, was without effect.

There was no conflict of laws in this case. For if it be supposed that the operation of the State statute was suspended by the existence of the Bankrupt Act, it was in full force again when the land descended.

This provision of the Act of 1834, ch. 293, became a part of the law of inheritance in Maryland; and the course of the descent of land is a matter peculiarly and exclusively under the State authority, and not to be controlled or affected by Federal legislation. The insolvent trustee is substituted for the insolvent heir, and upon the ancestor's death the fee vests *eo instanti*, by force of the statute, in the former. *Satterlee vs. Matthewson*, 2 *Pet.*, 413; *Watson vs. Mercer*, 8 *Pet.*, 110.

BARTOL, C. J., delivered the opinion of the Court.

Thomas T. O'Dell applied for the benefit of the insolvent laws, and received his discharge in January 1841. On the 28th day of March 1842, he applied for the benefit of the Bankrupt Law of the United States (of 1841,) and received his final discharge thereunder, in August 1842.

In December 1843, Elizabeth, wife of Isaiah O'Dell died intestate, seized in fee of a tract of land known as "Sheepfold and Wilmot's Meadows," leaving her husband surviving her, who died in 1847, and six heirs-at-law, among whom was Thomas T. O'Dell, the insolvent, who by deed dated the 10th day of May 1864, conveyed all his interest in the land to Elizabeth T. Lavender, the appellant, in trust for his wife and children. On the 7th day of October 1861, M. T. Gosnell was appointed trustee, in the insolvency proceedings, and claiming that he was

entitled, as such trustee, to the interest in the land which had devolved upon the insolvent, by the death of Elizabeth O'Dell and her husband, by virtue of the Act of 1834, *ch.* 293, *sec.* 2, sold and conveyed it to the appellees, who are now in possession.

This action was brought by the lessor of the appellant, claiming title under the deed of *May* 10*th* 1864. The plaintiff having abandoned all claim to "*Sheepfold*," the contest was as to the title to "*Wilmot's Meadows*." There was no dispute as to the facts above stated, and it was admitted that "the list of debts furnished by the bankrupt, did not include any mentioned in the insolvency proceeding." By agreement of counsel filed in this Court, it is admitted that the assets of the insolvent were not sufficient to pay the creditors mentioned in the insolvent proceedings, and that at the time of O'Dell's petition in bankruptcy, balances of their claims remained unsatisfied.

In this state of facts, the only question to be decided, is, whether the title to the lands devolved upon the insolvent trustee under the Act of 1834, ch. 293.

The second section of that Act provided, "that all property * * * * * * that shall be acquired by or accrue to the insolvent debtor, by gift, descent, or in his own right by bequest, devise, or in any course of distribution, shall be deemed and so distributed and applied, as estate of said insolvent debtor for the benefit of his creditors at the time of his application, and as effectually as any property mentioned in the schedule of such insolvent debtor upon his said application, and shall as from the time of said acquisition or accrual, vest in any trustee or trustees for his or her creditors, appointed, or hereafter to be appointed under such application." * * * * *

There can be no doubt about the construction and effect of this section. It declares in terms that the property which accrues to the insolvent after his discharge, by *inheritance,* shall vest in the *trustee,* for the benefit of his

creditors, who were such at the time of his application. *See State vs. Culler*, 18 *Md.*, 419, 433. Upon the death of Mrs. Isaiah O'Dell, in December 1843, the *one-sixth* part of the land in question, which descended to Thomas the insolvent, as one of her heirs was instantly vested in his insolvent trustee, by force of the Act of 1834 above cited. The statute operating to change the course of descent, and to substitute the trustee in the place of the insolvent, as the party to take the estate, which would otherwise have vested in the insolvent ; and consequently the latter could pass no title to the plaintiff's lessee by his deed of May 10th 1864.

But it is contended that the discharge of O'Dell under the Bankrupt Law in 1842, has defeated the title of the insolvent trustee. First, because the Bankrupt Law operated as a repeal of the insolvent laws of the State ; and secondly, because by his discharge under the Bankrupt Law, O'Dell was released from all his debts ; and there being no creditors remaining, the powers and rights of the insolvent trustee have ceased, and he cannot claim the property.

The answer to this argument seems to us to be very plain. It is certainly well settled that the power conferred upon congress by the constitution, to establish " a uniform system of bankruptcy," when " it has been exercised, is paramount and exclusive, and suspends the insolvent laws of the State, and the jurisdiction of the State Courts over cases falling within the purview and operation of the Bankrupt Law." *Van Nostrand vs. Carr*, 30 *Md.*, 128.

But that does not affect the rights of the parties in the present suit. The Bankrupt Law did not go into effect till the 1st day of February 1842. Long before that time (viz: in March 1840,) O'Dell had petitioned under the Insolvent Laws and executed a deed to his trustee, and in January 1841, had been finally discharged. During all that time the Act of 1834 was in full operation, and under

it the rights of the creditors and of the trustee had been fixed. Under that Act, as we have seen, the trustee became entitled to receive, for the benefit of the then creditors, any property which might thereafter accrue to the insolvent, in the manner prescribed by the Act. This right, though dependent for its beneficial enjoyment, was as completely vested in the trustee, as was his right to the property mentioned in the insolvent's schedule, and was not divested by the Bankrupt Law which was afterwards passed.

The effect of the Bankrupt Act, while it was in operation, was to *suspend, not to repeal* the insolvent laws of the State, and when the former was repealed on the 3rd day of March 1843, the insolvent system was again in full force and operation. The Legislature however, out of abundant caution, re-enacted the several Acts and statutes of the State relating to insolvent debtors, which were in force and operation at the time of the passage of the Bankrupt Law. *Act of* 1843, *ch.* 109.

But it is quite immaterial to consider either the effect of this Act, or the necessity for its passage. As it is very evident, that the rights of the trustee would not have been impaired or affected by the Bankrupt Law even if it had remained in full operation.

Now, what was the effect of O'Dell's discharge under the Bankrupt Law? The counsel for the appellant have argued that it released the bankrupt from all the debts which he owed at the time of his application under the insolvent laws, and that all such debts have been thereby cancelled as effectually as if they had been paid.

But this is an error. By his discharge under the insolvent laws, O'Dell had been released from all his debts and liabilities, existing at the time of his application. Consequently his then creditors had ceased to be such, and would not have been entitled to prove their claims against him

A

in the Bankrupt Court, or to participate in the funds in the hands of the assignee.

This is conclusive to show that they were not affected by the discharge in Bankruptcy.

When the proceedings in Bankruptcy took place, O'Dell was not seized or possessed of the land now in controversy, nor had he any right or title therein which could pass to his assignee. He had nothing but a bare expectancy, and all possibility of acquiring it by inheritance had before been surrendered ; or taken from him by the Act of 1834, which had changed the course of descent, substituting the trustee in his place, and providing that *eo-instanti* upon the descent being cast, the property should vest in the trustee for the benefit of his creditors, from whose debts he had been discharged under the insolvent laws.

For these reasons we are of opinion the prayer offered by the appellant was properly refused.

*Judgment affirmed.*

(Decided 23rd June, 1875.)

Stewart, J., dissented.