*In re* HERBERT L. DAMON, appellant from DECREE OF JUDGE
OF INSOLVENCY.

Androscoggin.   Opinion July 23, 1879.

*Insolvent act.   Constitutional law.*

The constitution of the United States does not prohibit the enactment of an
insolvent law by a state.

The insolvent act of this state, having been enacted while the federal bank-
rupt law was in force, went into full operation upon repeal of the bankrupt
law, and not before.

The provision of Stat. 1878, c. 74, § 15, authorizing the sequestration of the
estate of an insolvent without previous notice to him, is not unconstitu-
tional for that cause.

ON EXCEPTIONS.

On December 9, 1878, the judge of the court of insolvency, on
application of the creditors of the appellant, issued a warrant for
taking possession of the appellant's estate in accordance with the
provisions of Stat. 1878, c. 74, §§ 14, 15.   The warrant was made
returnable December 24, 1878, and ordered the appellant to then
appear.

On return day Damon appeared before the court of insolvency,
resisted the prayer of the application, and filed a motion alleging,
in substance, that he was adjudged an insolvent on December 9,
1878, on the petition of his creditors and without any notice to
himself, contrary to the law of the land; that the statute under
which he was so adjudged is unconstitutional and void, for that
when said statute was enacted, to wit: February 21, 1878, the
federal bankrupt law was in force and so continued until Septem-
ber 1, 1878; that the state statute did not take effect upon its
passage, or at the expiration of thirty days after the recess of the
legislature which enacted it, by reason of the federal bankrupt
law; and that the state statute never became of effect.   The
prayer of the motion was for a dismissal of the proceedings
against him.

The judge of the court of insolvency overruled the motion;
and Damon appealed to the supreme judicial court.

The presiding justice of the appellate court ruled, as matter of

law, that the decree appealed from be affirmèd. Thereupon the appellant alleged exceptions.

*Hutchinson, Savage & Hale,* for the appellant, cited 1 Kent Com. 387. *Houston* v. *Moore,* 5 Wheat. 21. R. S., c. 1, § 3. Const. Maine, Art. I, §§ 1, 9. U. S. Const. 7 Amend. 14 Amend. *Barron* v. *Mayor Baltimore,* 7 Pet. 243. *Porter* v. *Taylor,* 4 Hill, 140. Mass. Stat. different.

*Frye, Cotton & White, contra.*

APPLETON, C. J. The insolvent law of this state, c. 74 of the acts of 1878, was enacted while the bankrupt law of the United States was in full operation. The proceedings in the case before us are under the insolvent law of this State, and were commenced since the repeal of the bankrupt law.

I. It is objected that the statute of this state is unconstitutional and void because enacted while the bankrupt act of the United States was in full force.

It is provided by section eight of the first article of the constitution of the United States that "congress shall have power . . to establish . . uniform laws on the subject of bankruptcies throughout the United States." Here is no prohibition against the passage of bankrupt or insolvent laws by the states. As long as the national government abstains from legislation on this subject the states may act. "It is sufficient to say," observes Marshall, C. J., in *Sturgis* v. *Crowninshield,* 4 Wheat. 122, " that until the power to pass uniform laws on the subject of bankruptcies be exercised by Congress, the states are not forbidden to pass a bankrupt law, provided it contain no principle which violates the tenth section of the first article of the constitution of the United States." The right of the states to pass insolvent or bankrupt laws, and that the power given to the United States is not exclusive, has been repeatedly affirmed. *Boyle* v. *Zacharie,* 6 Pet. 348. *Cook* v. *Moffat,* 5 How. 310. *Baldwin* v. *Hale,* 1 Wall. 223.

If there is a state law on the subject, the subsequent passage of a bankrupt law by congress neither repeals nor annuls it. It only

suspends its operation so far as the law of the State may be in conflict with the act of congress. As was said by Bartol, C. J., in *Lavender* v. *Gosnell*, 43 Md. 153, "the act of congress suspends the state law but does not repeal it. Proceedings commenced under the state law prior to the passage of the bankrupt act may be carried on to their final termination in accordance with the provisions of the state law." *Judd* v. *Ives*, 4 Met. 401. *Chamberlain* v. *Perkins*, 51 N. H. 337.

A voluntary assignment by a debtor for the benefit of his creditors, under the insolvent law of the state, is *prima facie* an act of bankruptcy within the thirty-fifth section of the bankrupt act of 1867, but such an assignment, no proceedings in bankruptcy having been instituted, remains valid, unless such proceedings are instituted within six months thereafter. *Maltbie* v. *Hotchkiss*, 38 Conn. 80. The insolvent law of this state is not wholly superseded by the bankrupt act of the United States, but when they come in conflict, the latter must prevail. Hawkins' Appeal, 34 Conn. 549. Gerry's Appeal, 43 Conn. 289. In Iowa it was held that the state insolvent law was not nullified, superseded or suspended by the bankruptcy law, and that jurisdiction might be exercised under the former until proceedings have been commenced under the act of Congress. *Reed* v. *Taylor*, 32 Iowa, 209. But it is not required to go to the length of the case last referred to.

While the bankrupt law is in full force, it has, or may have, jurisdiction of cases within its provisions. "Upon the repeal of that law," observes Dewey, J., in *Atkins* v. *Spear*, 8 Met. 491, "the insolvent law of Massachusetts was revived, and with its revival all the limitations and restrictions upon the right to a discharge revived, although the acts occurred during its suspension." The bankrupt law merely suspending the state insolvent laws, upon its repeal they at once revive and need not be re-enacted. *Lavender* v. *Gosnell, supra.* "If the right of the states to pass a bankrupt law is not taken away by the mere grant of the power to congress," observes Marshall, C. J., in *Sturgis* v. *Crowninshield, supra*, "it cannot be extinguished; it can only be suspended by the enactment of a general bankrupt law. The repeal

.of that law cannot, it is true, confer the power on the states; but it removes a disability to its exercise, which was created by the act of congress."

It follows from these decisions that a state insolvent law is not unconstitutional, and that it is neither repealed, annulled nor rendered void by the passage of the bankrupt law, for proceedings commenced under its provisions may be completed, notwithstanding the existence of a bankrupt law enacted after their commencement, and because the moment the act of congress is repealed the state law at once revives. It is evident, therefore, that the state law has vitality notwithstanding and during the existence of the paramount law of the United States, for if it was void by the act of congress it could not revive.

We now come to the question whether the state can pass an insolvent or bankrupt law during the existence of an act of congress on the subject. In other words, whether the act under discussion is in force. Its validity is unquestioned unless absolutely void in its inception.

No constitutional provision has been violated, for the passage of such a law is not merely not prohibited, but it is impliedly sanctioned by the clause giving congress power over the subject matter of bankruptcies. The legislature may pass a law to take effect instantly, or at a future day, or on the happening of a future event. If the statute had said that it was to take effect upon and after the repeal of the bankrupt law of congress, there could have been no doubt as to its validity. But such is the precise effect of the law without the insertion of any such provision. The act of congress is the paramount law on the subject when called into action. The law of the state is subordinate to it. The efficient action of the state law is suspended for the time being precisely as in the cases already considered, when a national bankrupt law was passed subsequently to a state law on the same subject. The state may pass a law which is subordinate to the paramount authority of national legislation, and is only subordinate to that, but which, when that ceases to have force by reason of its repeal, has at once the vigor of law. Whether the law of the state is existent and superseded by the subsequent legislation of

congress, or is inoperative by reason of precedent congressional action, can make no difference. In either case the efficiency of the state law is alike suspended and in abeyance while the act of congress is in force, and when that is repealed the law of the state at once and instantly becomes operative, and action may be had under its provisions.

II. It is urged that the law was invalid because it did not go into complete operation after its passage. But that is not requisite to its validity. It does go into partial operation on its passage. It was a law valid in all respects and to be obeyed, except so far as it was in conflict with the statute of the United States. When that conflict ceased, the law went into full operation. It was a law, to go into full effect when it ceased to be in conflict with the act of congress, and whether that was inserted in the act, or left as the legal result from the relation of the state and national government to each other, can make no difference.

III. It is claimed that the act is in violation of the state constitution because, as the appellant's counsel allege, it provides by section fifteen that the debtor may be adjudged a bankrupt, and his property, without notice to him in the first instance, may be sequestered.

This is not a new question. It was raised in Massachusetts under provisions similar to those of the act under consideration, in *Kimball* v. *Morris*, 2 Met. 579. " The object of authorizing the preliminary proceedings seems to have been to provide in the first place for a sequestration of the property of the debtor, upon an *ex parte* application of a creditor, and in this respect does not differ from proceedings by writ of injunction, issued for the purpose of preserving the property in its present state." A similar question arose in relation to the power of bank commissioners to restrain banking corporations from acting, by injunction issued before any hearing, in *Com.* v. *Farmers & Mechanics' Bank*, 19 Pick. 542, and the constitutionality of the statute giving such power was affirmed. Indeed, the statute gives no more power than was conferred by the bankrupt law of the United States. Rev. Stat. U. S., § 5024. It authorizes the sequestration of the property of the debtor on certain conditions by warrant duly

issued by the judge of insolvency.   By the law of the state any
creditor, of his own mere motion, may seize by attachment, with-
out prior notice, all the attachable property of his debtor, or he
may, after taking the prescribed oath, arrest his person.   Much
more, then, may he sequestrate the attachable property of his
debtor under the sanction of a warrant issued by a magistrate
upon application upon oath.   *O'Neil* v. *Glover*, 5 *Gray*, 144.

*Exceptions overruled.*

WALTON, BARROWS, DANFORTH, VIRGIN, PETERS, LIBBEY and
SYMONDS, JJ., concurred.