FRANK HARBAUGH, Assignee,

*v.*

JOHN M. COSTELLO *et al.*

*Opinion filed February 19, 1900.*

1. VOLUNTARY ASSIGNMENTS—*national Bankruptcy law suspended operation of Illinois Assignment act.* The national Bankruptcy law, in force July 1, 1898, suspended from that date the Illinois Voluntary Assignment act, and deprived the county courts of this State of jurisdiction over assignment proceedings subsequently begun.

2. SAME—*effect of provision postponing right to file petitions in bankruptcy.* That the national Bankruptcy law of July 1, 1898, postpones the right to file a petition for voluntary bankruptcy one month and for involuntary bankruptcy four months, does not militate against the view that such law was operative from the date of its passage and after that date superseded insolvency laws.

*Costello v. Harbaugh*, 83 Ill. App. 29, affirmed.

APPEAL from the Appellate Court for the Second District;—heard in that court on appeal from the County Court of Henry county; the Hon. ANTHONY R. MOCK, Judge, presiding.

This is an appeal from a judgment of the Appellate Court, reversing, without remandment, an order of the county court entered in a proceeding under the Insolvent act, requiring the appellees to surrender property to the appellant as assignee of one Alexander White, an insolvent.

On July 16, 1898, Alexander White made, and on July 18, 1898, caused to be filed in the office of the clerk of the county court of Henry county, an assignment for the benefit of his creditors to the appellant, Frank Harbaugh. On July 16, 1898, the assignee took possession of the property assigned,—a stock of hardware in a store in Geneseo. On July 18, 1898, he filed his bond as such assignee. On the latter date the appellee, John M. Costello, a constable, took possession of said goods under a landlord's distress warrant, issued by the appellee, D. F. Sar-

gent, for $531.00 due to him from White for rent. Costello also had an execution, issued by a justice of the peace of said county, on a judgment, rendered against White in favor of J. W. Stewart for $132.40, and costs.

On August 1, 1898, the appellant, the assignee, filed his petition presenting the facts to the county court, citing the appellees, Costello and Sargent, to show cause why an order should not be entered, requiring them to surrender the property to the assignee. Costello and Sargent demurred to the petition. Their demurrer was overruled, and they elected to stand by the same, and did not answer further. Default was rendered against them, and the court entered an order for the return of the goods. The Appellate Court has granted a certificate of importance.

GEO. E. WAITE, and GEO. W. SHAW, for appellant:

It is not true that bankrupt laws suspend State insolvent laws unless their special provisions are inconsistent. The cases of *Sturges* v. *Crowninshield*, 4 Wheat. 208, and *Ogden* v. *Saunders*, 12 id. 153, relied on by the Appellate Court, do not sustain that view. Nor does *Tua* v. *Carriere*, 117 U. S. 201. It is also against the views expressed in *Mayer* v. *Hellman*, 1 Otto, 496, *Reed* v. *McIntyre*, 8 id. 507, and *Boese* v. *King*, 108 U. S. 379.

The doctrine of the Appellate Court only finds support in the decisions of lower courts, which are numerous and irreconcilable, and many of those relied on do not carry their views as far as the Appellate Court.

Our State law of voluntary assignments is not an insolvent law, in the sense of being a law which interferes with the operation of the Bankrupt act. *Mayer* v. *Hellman*, 1 Otto, 496.

A voluntary assignment under State law is not avoided by the Bankrupt act. It may be made the ground of proceedings in bankruptcy to be commenced within four months, but otherwise cannot be questioned.

The Bankruptcy act of July 1, 1898, was not in force as to voluntary assignments until the assignment in question had been made and taken in charge by the county court. The proviso of the act postponed the jurisdiction of the Federal courts over such assignments till August. The jurisdiction of the county court could not conflict with a Federal jurisdiction which had not yet come into existence. The act must be reasonably construed.

GRAVES & BROWN, for appellees:

The constitution of the United States vests in Congress the power to pass uniform bankruptcy laws. U. S. Const. art. 1, sec. 8, div. 4.

The last act of Congress on the subject of bankruptcy, approved July 1, 1898, by fair implication prohibits proceedings under State insolvency laws after that date. Bankruptcy act of October, 1898, last clause; *Parmenter Manf. Co.* v. *Hamilton,* 51 N. E. Rep. 529.

All acts of Congress on the subject of bankruptcy operate at once to supersede the State insolvency laws. *In re Damon,* 70 Me. 353; *VonNostrand* v. *Carr,* 30 Md. 128; *Griswold* v. *Pratt,* 9 Metc. (Mass.) 16; *Perry* v. *Langley,* 1 B. R. 559; 5 L. R. 117; *In re Reynolds,* 8 R. I. 485; 9 B. R. 50; *Martin* v. *Berry,* 2 B. R. 629; 37 Cal. 208.

If a debtor and his property are subject to operation of the Bankruptcy law, State courts have no jurisdiction. *Sturges* v. *Crowninshield,* 4 Wheat. 122; *Commonwealth* v. *O'Hara,* 6 Phil. 402; *Griswold* v. *Pratt,* 9 Metc. 16; *Beach* v. *Miller,* 15 La. Ann. 901; *Meekins* v. *Creditors,* 19 id. 497.

And this whether the State laws discharge the debtor from imprisonment for debt or not. *In re Reynolds,* 8 R. I. 485; 5 Am. Rep. 615; 9 B. R. 50; *In re Klein,* found at end of *Nelson* v. *Garland,* 1 How. 265.

The law authorizing assignments for the benefit of creditors in Illinois is an insolvency law. *Farwell* v. *Cohen,* 138 Ill. 216; *Hanchett* v. *Waterbury,* 115 id. 220.

Any State law which directs the making of a voluntary assignment of the property of an insolvent debtor

for the benefit of and to be distributed among his creditors is an insolvency law, whether it attempts to discharge the debtor or not. *In re Reynolds,* 8 R. I. 485.

Mr. JUSTICE MAGRUDER delivered the opinion of the court:

The petition of the appellees to the county court was demurred to upon the ground that the Voluntary Assignment law of this State had been superseded by the Bankrupt law passed by Congress on July 1, 1898, and that, therefore, the county court had no jurisdiction to make the order entered by it. The only question necessary to be considered is, whether the county court had jurisdiction to proceed under the State Assignment law, and make an order for the return of the property to the assignee, in view of the passage by Congress of the Bankruptcy act of July 1, 1898.

It is provided in section 8 of the first article of the constitution of the United States, that "Congress shall have power * * * to establish * * * uniform laws on the subject of bankruptcies throughout the United States." In interpreting this provision of the constitution, it has been held that the power to pass insolvent or bankrupt laws was not thereby taken away from the States until Congress itself should exercise the power thereby conferred by the passage of a bankrupt law. When, however, a bankrupt law is passed by Congress, any State law upon the subject, which may exist, is suspended in its operation. As soon as a national bankruptcy act goes into effect, State insolvency laws are suspended, and become inoperative, at least so far as they conflict with the act of Congress upon the subject, and so far as they embrace the same subject matter as is embraced in the act of Congress. (*Sturges* v. *Crowninshield,* 4 Wheat. 122; *Ogden* v. *Saunders,* 12 id. 213; *In re Klein,* 1 How. 277; *Tua* v. *Carriere,* 117 U. S. 201; *Chamberlain* v. *Perkins,* 51 N. H. 336; *In re Damon,* 70 Me. 153).

184—8

In *Tua* v. *Carriere, supra,* it was said by the Supreme Court of the United States that, if the Insolvent law of Louisiana, there under consideration, had been enacted before the passage of the Bankrupt act, it would have been valid, and that the effect of the Bankrupt act would have been to suspend it only while the Bankrupt act remained in force, and, on the repeal of the latter act, the Insolvent law would have revived. A national bankruptcy law, so long as it is in existence, suspends all State laws on the same subject. The doctrine is thus stated by Black in his recent work on Bankruptcy, on p. 271: "The passage of a national bankruptcy law by Congress renders it supreme. The State laws in force must yield to it and can no longer operate upon persons or cases within the purview of the Federal statute. The latter does not, indeed, repeal or destroy the State laws on the same subject, but it suspends their operation. If the State law and the Federal act operate upon the same subject matter, upon the same property, upon the same rights, and upon the same persons, creditors as well as debtors, or may so operate, they cannot go together without direct and positive collision, and, in such case, the Federal enactment suspends or supersedes the State law." The weight of authority is in favor of the doctrine as thus announced, although there are some cases, which hold that the State Insolvency law only becomes suspended as to a particular debtor when the bankrupt court adjudges such debtor a bankrupt and seeks to distribute his estate among his creditors. The cases upon both sides of the question may be seen by reference to the text books upon the subject of bankruptcy. (Bump on Bankruptcy,— 11th ed.—pp. 96-102; Collier on Bankruptcy, pp. 427-443).

It is unnecessary to discuss the provisions of former bankruptcy laws for the purpose of drawing a distinction between their phraseology, and that of the national Bankruptcy law of 1898. It is sufficient to consider a few of the provisions of the latter act.

The last provision of the Bankruptcy law of 1898 is as follows: "Proceedings commenced under State insolvency laws before the passage of this act shall not be affected by it." (Brandenburg on Bankruptcy, p. 547). This provision, under the familiar rule of statutory construction that the expression of one thing is the exclusion of the opposite, means that no proceedings under State insolvent laws shall be commenced after the passage of the act of 1898. The plain implication is, that proceedings commenced under State insolvency laws after the passage of the act of 1898 are unauthorized. The last provision of the act of 1898 was thus construed by the Supreme Court of Massachusetts in the recent case of *Parmenter Manf. Co.* v. *Hamilton,* 172 Mass. 178; and it was there held, that the Bankruptcy act of 1898 so far superseded the insolvency laws of the State from the time of its passage, as to deprive the State courts of jurisdiction to entertain petitions for the commencement of insolvency proceedings filed after said date.

In the provision of the act of July 1, 1898, next preceding the provision above quoted, are the following words: "This act shall go into full force and effect upon its passage." (Brandenburg on Bankruptcy, p. 547). The evident meaning is, that the rights of persons coming within the terms of the act are to be determined by the act from the time of its passage. The various provisions of the act, affecting the rights and conduct of creditors and debtors, supersede all conflicting provisions in the State insolvency laws. It is true, that the right to file a petition for voluntary bankruptcy is postponed one month, and the right to file a petition for involuntary bankruptcy is postponed four months. (Ibid). But, "whenever the proceedings (under the act) are commenced, the conduct of the parties after the passage of the act is to be tested by its requirements." (*Parmenter Manf. Co.* v. *Hamilton, supra*). The postponement of the filing of the petitions—in the one case for one month, and in the other

for four months—does not militate against the view, that the Bankruptcy law was operative from the date of its passage, and from and after that date superseded any State insolvency law. (*In re Rouse, Hazard & Co.* 91 Fed. Rep. 96; *In re Bruss-Ritter Co.* 90 id. 651).

In the case at bar, the assignment proceedings in the county court were not begun until July 16, 1898, after the Bankruptcy law went into effect. When, therefore, the proceedings in the county court were begun, the operation of the Assignment law had been suspended, and the county court had no jurisdiction to enter the order, requiring the appellees to give up the property levied upon to the assignee. In the absence of a bankruptcy law, the county court undoubtedly had jurisdiction to try the right to the property levied upon as between the appellees and the assignee. (*Wilson* v. *Aaron*, 132 Ill. 238). Such jurisdiction is merely ancillary to the special jurisdiction to administer insolvent estates, as conferred upon the county court by the Assignment law.

The Assignment act of Illinois has been held to be a general insolvent law, and it was so intended by the legislature. (*Hanchett* v. *Waterbury*, 115 Ill. 220; *Farwell* v. *Cohen*, 138 id. 216). It thus being a State insolvency law, the proceedings commenced under it after the passage of the Bankruptcy law of July 1, 1898, were unauthorized, its operation having been suspended by the Bankruptcy law.

It is true, that an insolvent law is a law for the relief of creditors by an equal distribution among them of the assets of the debtor, and does not necessarily involve the discharge of the debtor; while a bankrupt law secures the relief of the insolvent debtor by his discharge. The object of a bankrupt law, however, is not merely to discharge the debtor, but its object, prior to such discharge, is to secure an equal distribution of the property of the bankrupt debtor among his creditors. (*Boese* v. *King*, 108 U. S. 79; *Mayer* v. *Hellman*, 91 id. 496; *Buchanan* v. *Smith*,

16 Wall. 277). So, also, the main object of the Illinois Voluntary Assignment act is to secure equality of right among the creditors of a debtor, who makes a voluntary assignment of his property. (*White* v. *Cotzhausen*, 129 U. S. 329). Inasmuch, therefore, as the Bankruptcy act of 1898, and the Illinois Voluntary Assignment act both operate upon the same subject matter, to-wit, the assets of the bankrupt; and upon the same persons, to-wit, the bankrupt and his creditors; and in the same way, or upon the same rights, to-wit, the *pro rata* distribution of said assets among said creditors, they cannot be in force together without direct and positive collision. It necessarily follows, that the Federal act suspends or supersedes the State law. (*In re Curtis*, 91 Fed. Rep. 737).

In addition to what has been said, section 3 of the act of July 1, 1898, says that making "a general assignment for the benefit of his creditors" by any person is an act of bankruptcy. (Brandenburg on Bankruptcy, p. 520). The consequence of such an assignment, if allowed to stand, would be to withdraw the estate from the administration of the court of bankruptcy, and so defeat the operation of the Bankrupt law. (Black on Bankruptcy, p. 20). The fact, that the making of a general assignment under the State law for the benefit of creditors is made an act of bankruptcy, is of itself sufficient to authorize the Federal court, under the act, to take the same property at the instance of the same creditors and distribute it among the same creditors in the same proportion. Ordinarily, this could not be done under the general doctrine, that, where one court gets jurisdiction of the subject matter and of the person, it will retain such jurisdiction until the final determination of the controversy and cannot be disturbed in the exercise thereof by any court of co-ordinate jurisdiction. If, upon making a general assignment under the State law for the benefit of his creditors, the debtor commits an act of bankruptcy, and a Federal court of bankruptcy can seize the property

so assigned, then the State court, acting under the State law, has not such jurisdiction as authorizes it to proceed in the manner contended for in this case. It is manifest that Congress intended that all laws, clothing the State courts with a special jurisdiction in insolvency matters, should be superseded by the Bankruptcy law.

The constitution of the United States specifies uniformity as the special characteristic of bankrupt laws to be passed by Congress. If State laws are to remain operative, and State courts are to exercise jurisdiction in the distribution of insolvent assets, then there is no uniformity in the law governing the subject, as the insolvent law of each State differs more or less from that of every other State. The continued exercise of jurisdiction by the State courts in such cases would be an infringement of the constitutional requirement as to uniformity. It is well said by the Appellate Court in their decision of this case: "If, however, upon the enactment of a bankruptcy law, the judicial distribution among creditors of the property of insolvent debtors who desire their property distributed to their creditors, and of insolvent debtors who have been guilty of an act of bankruptcy, is committed exclusively to the courts of bankruptcy appointed by such law, then we have a uniform system by which such distribution may be effected through the medium of courts."

We are of the opinion, that the county court erred in entering the order against appellees for the restoration of the property levied upon to the appellant, and that said court had no jurisdiction in the insolvent proceeding instituted before it under the Assignment act, by reason of the fact that the operation of that act had been suspended after July 1, 1898, by the passage on that date of the national Bankruptcy law.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*